## WATSON *v.* THE STATE.

1. Where on his trial for murder the defendant admitted that he bore the same name as the alleged slayer, but denied any knowledge of the homicide, and there was evidence that the defendant was the actual slayer, testimony of a witness, that immediately after the homicide two persons, one of them corresponding in appearance with the defendant, came near the house of witness, located about 350 yards from the scene of the homicide, and while there the companion of the defendant told the witness the name of the defendant and that he was the slayer, under circumstances authorizing an inference that the defendant heard him, was not open to the objection that the same was inadmissible because it did not positively appear that the defendant heard the statement of his companion.

2. The admission of immaterial evidence which is not calculated to harm the defendant is not cause for a new trial.

3. The evidence did not authorize an instruction on the law of justifiable homicide in defense of habitation.

4. Where on a trial for murder the evidence authorized an inference that the killing was in resistance of an arrest by an officer and posse without a warrant, and the court correctly charged the law of voluntary manslaughter and justifiable homicide, it is no ground for new trial that the court failed to concrete the charge with reference to a particular phase of the case, there being no written request therefor.

5. The defense of alibi was made only by the defendant's statement; and it was not error for the judge to omit to charge thereon in the absence of a written request.

6. The charge covered all the main and substantial issues in the case, and it is not ground for new trial that the court failed to charge the law relative to threats made by the deceased against the defendant.

7. The evidence supported the verdict.

APRIL 14, 1911.

Indictment for murder. Before Judge Rawlings. Bulloch superior court. February 20, 1911.

*Homer C. Parker, J. L. Renfroe,* and *Francis B. Hunter,* for plaintiff in error.

*H. A. Hall, attorney-general, Alfred Herrington, solicitor-general, Hines & Jordan,* and *R. Lee Moore,* contra.

EVANS, P. J. Andrew Watson was convicted of the murder of Andrew Kennedy, and recommended to mercy. He was refused a new trial, and brings error. The trial occurred about twelve years after the homicide. It is inferable from the testimony of the State, that about daybreak an officer with a posse of seven men came to the house of Sam Jackson for the purpose of arresting Andrew Watson, who was supposed to be in the house, for an alleged burglary of the storehouse of Andrew Kennedy. Their approach caused the dogs at the house to bark, and Sam Jackson came to the door of the house, saying, "Here is dogs, and it's negro dogs." He then drew near the posse, who told him to go back into the house and build a fire. When he went back into the house Andrew Watson said to him, "What do they want?" to which he replied, "They want a fire." Watson then said "If a fire is what they want I will give them a fire." Upon his making this statement, a woman's voice was heard to exclaim two or three times, "Don't shoot." Watson then came to the door and shot four or five times with a rifle, killing Andrew Kennedy and wounding the officer. After the shooting Watson ran off, and at a distance of about fifty yards from the house he fired his gun again, and he was fired upon by the posse. The defendant offered witnesses whose testimony tended to show that the Andrew Watson, who was accused of burglary and also of the murder of Kennedy, and who at the time of the commission of these alleged crimes lived in that community, was a person other than the defendant on trial, and the defendant in his statement denied that he was the Andrew Watson, the slayer of Kennedy.

1. The evidence was voluminous, and in the main was directed to establishing the identity of the man on trial as the slayer. Among the witnesses offered by the State was W. B. DeLoach, who testified that he spent the night at Morgan DeLoach's house, located

350 yards away from the house where the killing occurred; that he had just arisen and was dressing himself when he heard four or five shots and some cries; he immediately came out of the house, and while on the steps, arranging his clothes, Sam Jackson came running up the road from his house, and when he reached the witness he told witness that two white men had been killed at his house. Just then another man armed with a gun or rifle ran up and called Sam Jackson. After a brief interchange of words this man ran off. The witness asked Sam Jackson who the man was, and Sam Jackson replied that it was "Andrew Watson who did the shooting." The witness testified "I wouldn't swear that Andrew Watson heard it or didn't hear it. I don't know about that, because I couldn't tell. He could or should have heard it. It is reasonable that he could have heard it, from the distance that he was. It was possible that he didn't hear it, and possible that he could have heard it, both of them." The witness testified that he did not know Andrew Watson; but that the man on trial corresponded in appearance and size with the man who was with Sam Jackson on the occasion referred to in his testimony. The testimony of this witness as to the conversation between him and Sam Jackson was objected to on the ground that it did not occur in the presence of Andrew Watson, and the defendant would not be bound by any statement by Sam Jackson unless it was positively shown that it was made in the defendant's presence. There is no dispute in the evidence that Kennedy was killed by a man called Andrew Watson. The defendant admitted that his name was Andrew Watson, and most of the evidence on the trial was directed to the issue of the identity of the accused with the slayer. There was testimony of eye-witnesses to the homicide that the defendant on trial was the slayer of Kennedy, and the testimony of this witness also bore on the issue of identification. If the jury should find that the defendant was the same man who killed Kennedy and who came up to DeLoach's house almost immediately after the homicide, then it would be competent to show an unchallenged statement in his presence that he was the slayer. It was for the jury to say whether the statement of Jackson was made in the presence of the defendant, and the court properly allowed the evidence to go to the jury.

2. The sheriff of the county was allowed to testify that he had held the office of sheriff for nine years, during which time he held

a warrant for the defendant, which warrant may have been in his office or in the clerk's office. The objection to the evidence was that the exhibition of the warrant would be the best evidence of it, and that the crime was alleged to have been committed three years before the sheriff's induction into office. Upon reading the testimony of the sheriff, it clearly appears that he was referring to the warrant against the accused for murder; and even if this testimony was inadmissible, it related to an immaterial subject not calculated to harm the defendant.

3. Complaint is made that the court's charge on the law of justifiable homicide did not embrace an instruction that one may justifiably take life to prevent persons in a riotous and tumultuous manner from entering his habitation for the purpose of offering personal violence to any person dwelling or being therein. The evidence did not authorize such an instruction.

4. It is urged that the defendant should have a new trial, because the court failed to charge the following principle of law: "Where in a trial for murder the defense relied on was lawful resistance to a felonious attempt to arrest without authority, the law of justifiable homicide in self-defense was not alone applicable, but the court should have charged the jury the law relating to the right of the defendant to resist an attempt to arrest him illegally." There was no written request for such a charge. The court correctly charged the law of voluntary manslaughter and justifiable homicide; and if the accused had desired further elaboration, or a concrete application of the law to a particular phase of the case, he should have made a timely written request. *Rogers* v. *State*, 128 *Ga.* 67 (57 S. E. 227, 10 L. R. A. (N. S.) 999, 119 Am. St. R. 364).

5. One assignment of error is to the effect that the court omitted to charge the law applicable to the defense of alibi. In his statement the defendant claimed that he was at another place at the time of the commission of the alleged crime, but no testimony was introduced tending to show that he was at a place other than the scene of the homicide at the time of its alleged commission. This court has frequently decided that the judge may construct his charge upon the various issues made by the evidence; and that if a defense is set up in the statement alone, it is not error for the

judge to omit submitting the law appropriate to such defense, in the absence of a timely written request.

6. Complaint is made of the failure of the court to charge the jury the law relating to threats made by the deceased against the defendant. What particular principle of law the counsel for the accused desired the court to give in charge is not made to appear. If the accused desired any particular instructions upon any collateral issue he should have submitted a timely written request. *Watts* v. *State,* 120 *Ga.* 496 (48 S. E. 142).

7. The evidence was sufficient to authorize the verdict, and no error of law requiring a new trial is made to appear.

*Judgment affirmed. All the Justices concur.*