### WHITE *v.* THE STATE.

1. The court did not err, after instructing the jury that they were to determine the credit to be given to the testimony of each witness and the entire testimony in the case, in charging that in doing this they might "take into consideration the conduct of the witnesses upon the stand, their intelligence, their means and opportunity of knowing the facts about which they testified, the reasonableness or unreasonableness of

their testimony, their interest or want of interest in the result of the trial, and their personal credibility so far as the same might legitimately appear upon the trial, and the probability or improbability of their testimony." The use of this language did not limit the jury, in passing upon the credibility of witnesses, to the consideration of those things enumerated, or tend to exclude from the consideration of the jury all the facts and circumstances in the case; especially as the court in another part of the charge instructed the jury: "You will look to the evidence and the defendant's statement as submitted to you, and determine from all of the facts and circumstances surrounding the transaction what the truth of the case is, and then render your verdict according to that truth, whatever it may be."

2. The exception to the charge on the ground that it submitted to the jury the contention that the accused in killing the decedent acted in defense of his life, and that it excluded other proper theories of self-defense, is without merit when considered in connection with the entire charge.

3. Under the evidence the court did not err in charging the provisions of section 73 of the Penal Code, which relates to the killing of another by the accused in his defense where it appeared that the danger was urgent.

4. Instructions on the law of voluntary manslaughter and justifiable homicide should be independent of each other.

5. In a proper case, in a trial of one indicted for murder, sections 70, 71 and 73 of the Penal Code may all be given in charge; but instructions as to the separate branches of the law of justifiable homicide should not be so given as to confuse the different defenses which may arise under those sections. In the present case the three sections referred to were given, and were involved, so as to make it proper that they should be charged; but the court did not give the jury appropriate instructions as to the cases in which the provisions of section 73 were applicable, so as to prevent confusion in their minds of the provisions of section 73 and those of sections 70 and 71.

No. 133. NOVEMBER 17, 1917.

Indictment for murder. Before Judge Summerall. Coffee superior court. December 30, 1916.

George White was indicted for the offense of murder, it being charged that he feloniously killed Thomas Daniels by shooting him with a pistol. The jury returned a verdict of guilty, with a recommendation, and the defendant made a motion for a new trial, which was overruled.

*Wallace & Luke, Chastain & Henson,* and *E. K. Wilcox,* for plaintiff in error.

*Clifford Walker,* attorney-general, *M. D. Dickerson,* solicitor-general, *C. A. Ward,* and *M. C. Bennet,* contra.

BECK, P. J. 1. The ruling made in headnote 1 requires no elaboration.

2.  Complaint is made of the following charge of the court: "The defendant admits the killing, but contends that it was done in self-defense—in defense of his own life.  I charge you, gentlemen, that if you believe from the evidence submitted to you upon the trial of this case, and the defendant's statement, that the contentions of the defendant are true, then you should acquit him." The plaintiff in error contends that the effect of the instruction last quoted was to withdraw from the consideration of the jury his contention that the killing was necessary to prevent the infliction of a serious personal injury upon him amounting to a felony, and his contention that he acted under the fears of a reasonable man, and to limit the jury to a consideration of the question whether or not such killing was necessary to save his own life.  While there was evidence introduced by the defendant which made appropriate a charge submitting to the jury the defendant's theories both that the killing was necessary in order to save his life or to prevent the infliction of a serious personal injury upon him amounting to a felony, and that the circumstances were sufficient to excite the fears of a reasonable man that an injury amounting to a felony was about to be inflicted upon him at the time of the killing, and that he had reason to fear that such an injury would be inflicted or that his life would be in danger, nevertheless the instruction now under consideration was not error; for the court elsewhere in his charge submitted these last-stated contentions of the defendant and gave the law applicable thereto. And in stating to the jury that the defendant admitted the killing but contended that it was done in self-defense, and in charging them that if they believed that this was true the accused should be acquitted, the court merely stated a contention of the defendant, as appears from his own statement; for, after expressly admitting the killing, he added, "I am sorry that I had it to do; I did it in self-defense," and then narrated the circumstances of the fatal encounter which resulted in the death of Daniels,—a narration which, if it had been credited by the jury, would have established the contention of the defendant that he acted strictly in self-defense.  And if the court had stated no other contention of the defendant than the theory that he killed the decedent in order to protect his own life, exception to the charge might have been well taken; but elsewhere in the charge the court instructed

the jury as follows: "The right to kill in self-defense is not restricted to where the accused is put in actual danger of his life or the fears of a felony being committed upon him by the deceased, but may be exercised when the danger is not actual, if the accused in good faith, under the fears of a reasonable man, acted upon the belief that the danger was real. The sufficiency of the fears is a question for the jury to determine. An apparent necessity, acted upon in good faith, is the equivalent to a real necessity. The defendant is to be judged by the jury in the light of the circumstances surrounding him at the time of the killing, and as they then appeared to him at the time of the killing, and as they then appeared to him, acting as a reasonably courageous man at that time and under such circumstances; and if a reasonable doubt arises in your minds as to whether the defendant is guilty, under all the facts and circumstances surrounding him at the time, you should acquit him; and if there is no such doubt, you should convict him of the offense of which the facts and circumstances show him to be guilty, if you find him guilty of any offense. If the facts and circumstances surrounding the defendant at the time he did the killing were such as to excite the fears of a reasonably courageous man that a felonious assault was intended, or might accrue upon him, and if he did the killing under the influence of those fears, the verdict should be justifiable homicide." Manifestly, when the charge in regard to self-defense which is complained of is considered in connection with the portion of the charge last quoted, the exception is without merit.

3. The court charged the jury as follows: "If a person kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary. It must appear also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given." This charge was excepted to on the ground that it was not applicable to the case on trial, not being warranted by the evidence, and that there was no evidence of mutual combat. The jury would have been authorized in this case to find, upon consideration of all the evidence, that the accused and the decedent came together at the home of one Mrs. Gaskins, who was related by marriage to the

families of both the accused and the decedent; that, after having engaged in a brief conversation, a statement was made by one of them and disputed by the other, and that the decedent said to the accused, when the latter denied having made a certain statement, "You did," and upon the defendant's repeating the statement, "I didn't," the decedent put his hand on the shoulders of the accused and said, "You dispute my word," whereupon the accused stepped back, drew his pistol, and fired at Daniels, thereby inflicting the wound from which Daniels died in a few minutes. There was other evidence tending to show that before going to Mrs. Gaskins' home the accused made preparation by arming himself for combat, and that a violent assault was made by Daniels upon the accused by attempting to seize him and by striking at him with his fists. There was still other evidence to show a violent assault by Daniels upon the accused, the accused retreating at the time until he reached a corner of the house. The accused, reiterating what the witnesses had said as to a violent assault upon him, stated also that the decedent drew from his pocket a knife and was advancing with a knife upon him and had raised the knife into a stabbing position, and, seeing it in that position and being afraid that his life was in danger, the accused immediately fired. We think that under this evidence, and the inferences which the jury were authorized to draw from it, the law of mutual combat was involved, and the court did not err in charging the jury the law in reference thereto.

4. The court charged the jury in the exact language of section 65 of the Penal Code, which embraces the law of voluntary manslaughter, and added immediately thereto the following: "In this connection I charge you that although words, threats, menaces, and contemptuous gestures can in no case reduce the crime of murder to voluntary manslaughter, they may justify the killing, if the words, threats, menaces, or gestures, taken in connection with the facts and circumstances surrounding the transaction, were sufficient to induce a reasonable fear in the mind of the defendant that he was really in danger of losing his life or in having a felony committed upon him. Whether they were sufficient to excite the fears of a reasonable man is a question for you to determine from all the facts and circumstances of the transaction under investigation. The 'other equivalent circumstances,' as

used in this section just read to you, defining voluntary manslaughter, must be such as are reasonably calculated to produce the same state of mind upon the part of the defendant as would an assault, or an attempt to commit a serious personal injury on him. If you find that the defendant, without malice, and not under such circumstances as would justify or excuse the killing, voluntarily killed the deceased, and that he was impelled to do so by a sudden, violent impulse of passion, supposed to be irresistible, produced by some actual assault on the defendant, or an attempt by the deceased to commit a serious personal injury upon the defendant, or by other equivalent circumstances sufficient to justify the excitement of passion, then the homicide would, in law, be voluntary manslaughter." This charge was erroneous, because of the mingling of the law of defense of person or life with the definition of voluntary manslaughter, which necessarily tends to a confusion of these two phases of homicide. In *Deal* v. *State,* 145 *Ga.* 33 (88 S. E. 573), it was said: "The Penal Code (1910), § 65, specially declares what shall and what shall not be sufficient provocation. That section is plain, positive, and pointed, that provocation by words, etc., shall in no case be sufficient to free the person killing from the guilt and crime of murder. If one kills another solely because he is *provoked* by words, threats, menaces, or contemptuous gestures on the part of his victim, the statute brands the slayer as a murderer. The code section defining voluntary manslaughter deals with *provocation* as reducing the homicide; and not with conduct on the part of the decedent calculated to excite the fears of a reasonable man that a felony is intended against the slayer's person, or that his life is in imminent danger. Provocation is not an element in self-defense or justifiable homicide. *Adkins* v. *State,* 137 *Ga.* 81 (6) (72 S. E. 897) ; Wharton on Homicide, § 235. The plea of self-defense rests upon the idea of necessity, apparent or real, which in law will excuse one for so grave an act as the taking of human life. A plea of self-defense is not sustained where it appears that the slayer took the life of his victim solely because he was provoked by words, menaces, threats, or contemptuous gestures. Any attempt to inject the law of defense of person or life in the definition of voluntary manslaughter would tend to a confusion rather than a differentiation of these two phases of homicide. It is certainly the better practice·

in instructing the jury, where the law of voluntary manslaughter is applicable, to submit the question independently of the instructions on justifiable homicide."

5. Another portion of the charge complained of is in the following language: "The court charges you that justifiable homicide is the killing of a human being by commandment of the law in execution of public justice; by permission of the law in advancement of public justice; in self-defense, or in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony on either. A bare fear of any of these offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge. If a person kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that in order to save his own life the killing of the other was absolutely necessary. It must appear also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given." This charge is complained of as tending to confuse the theories of the defense set up, because it states the law embraced in sections 70 and 71 of the Penal Code, which relate to justifiable homicide and reasonable fears, with the provisions of section 73 of the Penal Code, which allows a person to kill another in his defense under the circumstances there enumerated, where the danger is so urgent and pressing as to render the killing absolutely necessary in order to save the life of the slayer, and which section is applicable only in cases of mutual combat. Under previous decisions of this court this charge was clearly error. While sections 70 and 71, as well as section 73, were applicable to the case under the evidence as developed at the trial, they should not have been given in charge in such a way as to confuse the different defenses which may arise under those sections. In view of the discussion of this question in other cases decided by this court, no further discussion of the question is necessary here. See *Franklin* v. *State*, 146 *Ga.* 40 (90 S. E. 480).

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*