## FELDER v. THE STATE.

1. There was no evidence in the case requiring or authorizing a charge upon the subject of voluntary manslaughter, and the failure of the court to charge upon that subject was not error.

(a) Even if the statement of the accused authorized a charge upon the subject of voluntary manslaughter, there was no request in writing to so charge; and in the absence of a written request the court was not bound to present a theory of the case based solely upon the statement.

2. There is no merit in the contentions made in the second and third special grounds of the motion for a new trial, to the effect that the court erred "in restricting the charge on reasonable fears to a narrow and uncertain definition of same," and that he erred in failing to charge on the principle of "words, threats, menaces, and contemptuous gestures;" the movant not attempting, in these grounds of his motion, to point out wherein the charge on reasonable fears was restricted, nor what charge on the principle of words, threats, menaces, and contemptuous gestures should have been given.

3. The alleged newly discovered evidence, being impeaching and cumulative in character and not such as to show that a different result would probably be reached on another trial, does not require the grant of a trial.

No. 1528. NOVEMBER 17, 1919.

Indictment for murder. Before Judge Gower. Dooly superior court. May 31, 1919.

*Gilbert C. Robinson,* for plaintiff in error.

*Clifford Walker*, attorney-general, *Joseph B. Wall*, solicitor-general, and *M. C. Bennet*, contra.

BECK, P. J. Charles Felder was tried under an indictment charging him with the offense of murder, in that he had feloniously killed one Will Harris by shooting him with a pistol. The jury returned a verdict of guilty, with a recommendation. The defendant made a motion for a new trial, which was overruled, and he excepted.

1. The original motion for a new trial contains the general grounds. The first ground of the amendment to the motion complains of the failure of the court to charge upon the law of voluntary manslaughter. There was no request in writing so to charge, but counsel for the plaintiff in error insists that the evidence authorized and demanded a charge by the court upon this subject. The evidence upon which the movant mainly relies as demanding the charge is contained in the testimony of a witness for the defendant, one Rush West. This witness and the deceased, Will Harris, and a considerable number of other negroes were in attendance upon a party on the evening of the homicide. Rush West and Will Harris had an altercation at this gathering. Will Harris and a brother of his had left the house and gone off some distance. The wife of West urged him to go home, and, to quote his language, "I pulled out to go home, and him and Hardwick Harris run down to that oak tree and overtaken us, and Will Harris was on my side, and he throwed a pistol in my face, and hunched me with the pistol, and walked around and cursed with the pistol in his hand, and he cursed around there, and afterwards another fellow run up there, run around the tree this way, and he heard him coming, and he turned around to him, and that give me a chance to go home; and I never did turn around any more. I don't know who the fellow was that come down there. That was my first time of seeing Will Harris, was that night; he was the one that had some trouble at the house; he shot at some one; and that was Hardwick Harris with him; I knowed him. He just run down there to the tree and was cursing me, and when the man came around the tree he just turned and was cursing at him. I don't know what he said, and I just turned and run, and I got I reckon about fifty yards up the road, up there at another house, when I heard the shooting, but I don't know how many shots were made;

as near as I could get at it there was about fifteen shots made. I heard a shot before that time; when they first got out of the door I heard a pistol fire in the yard, when I was along about that oak tree; and directly I got to the oak tree they took and caught up with me. I don't know who fired that shot in the yard; they come on towards me, and just as I got against the oak tree I looked back and seed them, and about that time they caught up with me. That shot looked to me like it come from the direction where they was. Will was drinking that night. I don't know how many fusses was at the house that night." On cross-examination he testified: "I didn't see Charlie Felder after I got out of the door, after I left him there. I didn't stop when I got out doors. I just kept going; my wife and her brother were with me. Charlie Felder didn't never catch me. I had just got to the tree when Willie Harris caught me. I stopped when Willlie holloaed at me. I had to stop, he had a pistol in my face; he run around in front of me, and Hardwick was in the cotton field, about as far as from here to that man (indicating). Hardwick had a pistol and Willie had a pistol. I didn't have anything, not even a pocket-knife. He just stepped up and throwed a pistol in my face and asked, 'Who in the hell is you?' I didn't say nothing; I was scared so I never did say anything; and this fellow run around from the tree and asked what was the matter, and they turned to him, and that give me a chance to get away; just as soon as they turned to him I run on up the road. I don't know who that was that came around that tree. I seed him when he came around there, but it was dark and I couldn't tell who he was. I can't tell you how dark it was; it was pretty dark; it wasn't cloudy; the stars were shining. I could see Willie Harris and could see his gun, and could see Hardwick and could see his gun, even when he was in the cotton field. I could see the fellow whenever he turned around the tree all right enough, but couldn't see his face to tell who he was. I didn't see no pistol about him. Me and my wife went right straight on home from there; we had gone about fifty yards when I heard the first shot; was further than to the back of the court-house. I didn't hear anything said between Willie Harris and that man that came around the tree, more than he asked what was the matter; that was all I could understand. I turned and went on off, was running when I went away from there; it didn't take me long to make fifty

yards; it was, I reckon, more than fifty yards; whatever distance it was it didn't take me long to get there. I heard one shot, and then I heard fifteen more, as near as I can get at it. I can't tell you how long it was after the first shot until I heard the fusillade; not long, more than a minute. I had done got to George Lewis's house, but I don't know how long it was; was in front of his house, right by his door. I didn't stop at his house."

Another witness, Maggie West, testified as follows: "I am Rush West's wife. I went to a Christmas tree at Lee Adams's during Christmas; don't recall any disturbance or fuss there that night. I don't know exactly what time me and my husband went there that night. When we got to the oak tree after we left the house Hardwick and Will Harris overtaken us. I saw them. I saw Hardwick run up with a pistol and throw it on him, and when I seen that I went to running. I didn't hear what was said. I don't know who else came up besides them two boys, because I run. There wasn't nobody with me and my husband, because my sister and my brother was running. I didn't see anything after they run, because I was running. I don't remember hearing any gun shoot, because I was running, and I didn't hear nothing."

This is the only testimony in the case upon which the movant can base the contention that the evidence required a charge upon the subject of voluntary manslaughter. The evidence for the State showed an unprovoked murder. The eye-witnesses introduced by the State testified positively that the defendant stepped from behind the tree referred to in the foregoing testimony, and, without provocation, shot and killed Will Harris. If the witnesses for the State spoke truly—and the jury evidently believed them,—the verdict of guilty of murder was a proper one. There is nothing in the testimony of Rush West and Maggie West, quoted above, which would authorize the finding that the homicide was voluntary manslaughter. According to the testimony of Rush West and his wife, the defendant did threaten him with a pistol and place it almost against him. But Rush West was not the slayer. When he saw himself menaced by danger, he fled from the scene and was about fifty yards away before firing was heard; and there is nothing in his testimony to show that Charlie Felder fired, or that if he fired he did so because provoked thereto by any menace to himself or because of any menace to Rush West. There is nothing in the

evidence to indicate that anything had happened to or in the presence of Charlie Felder to arouse or justify in him that irresistible passion which must exist in order to reduce a homicide from the grade of murder to voluntary manslaughter. In his statement, in substance, he denies shooting at all. Possibly there are involved in his statement certain facts which would have reduced the homicide to voluntary manslaughter, because he stated matters tending to show an assault upon himself. But the court was not required to charge upon a theory of the case presented alone by the statement, and there was no request in writing to charge. Consequently there was no error upon the part of the court in failing to charge the law of voluntary manslaughter.

2. There is no merit in the contentions made in the second and third grounds of the amended motion for a new trial, that the court erred "in restricting the charge on reasonable fears to a narrow and uncertain definition of the same," and that the court erred in failing to charge on the principle of "words, threats, menaces, and contemptuous gestures;" the movant not attempting, in these grounds of his motion, to point out wherein the charge on reasonable fears was restricted, nor what charge on the principle of "words, threats, menaces, and contemptuous gestures" should have been given. The assignments of error on the defects in the charge therein referred to are themselves uncertain and vague.

3. The alleged newly discovered evidence, being impeaching and cumulative in character and not such as to show that a different result would probably be reached on another trial, does not require the grant of a new trial.

The evidence in the record authorized the verdict, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur, except Atkinson, J., absent.*