PATTERSON *v.* THE STATE.

JENKINS, Presiding Justice. 1. The evidence authorized the jury to find the defendant guilty. This is true irrespective of whether the defendant Patterson was a joint conspirator with Boyd, who was also indicted, so as to render each responsible for the act of the other, or whether Patterson acted purely on his own impulse. The evidence authorized a finding that Patterson inflicted the mortal wound, in that when Boyd backed the retreating Johnson, the deceased, into the back dark room, they were followed by Patterson, who joined in the altercation with an open knife in his hands; that the decedent died from knife wounds, one of which severed his jugular artery; that the deceased, before his death a few minutes later, on reaching the home of a neighbor several doors distant, at which Moon Mulling was present, cried out, "Moon, Moon, Henry, Henry," which the jury were authorized to interpret as an effort to connect "Henry" with the homicide; and that, when Moon Mulling asked Johnson who cut him, he said, "Henry," the evidence showing that the defendant, Henry Patterson, was the only person involved by the name of Henry. Moreover, it appears from the evidence that the defendant asked Moon Mulling who had cut the deceased, to which Mulling replied, "You are the one that cut him," and the defendant said, "I know it, I know it." Such a finding

was authorized, irrespective of the fact that the other party indicted, Mose Boyd, told another witness: "I stabbed at him; I don't know whether I hit him or not because it was kind of in the dark."

2. The court did not err in failing to charge the contention of the defendant as to an alibi. There was nothing in his statement to the jury to contradict the evidence that the defendant followed Johnson, the deceased, with an open knife behind the man who was backing Johnson into the corner of a dark room. On the contrary, in his statement he said: "1 was there, but I didn't do nothing to him." Moreover, even if the defendant had in fact by his statement raised the defense of alibi, it was not error, in the absence of evidence on this subject, for the court to fail to charge thereon, in the absence of a written request so to do. *Watson* v. *State*, 136 *Ga.* 236 (5) (71 S. E. 122).

3. The judge instructed the jury that the defendant had entered a plea of not guilty of the offense charged, and "is presumed by law to be innocent of that charge until and unless the evidence satisfies your minds beyond a reasonable doubt; the burden of such proof is on the State." The statement of the defendant amounted in substance to a mere plea of not guilty; that portion which dealt with the homicide itself merely stating that, "as far as me having anything to do with it, I didn't have nothing to do with it; I was in there but I didn't do nothing to him." If the defendant desired any more detailed instruction as to what he might have conceived to be some particular line of defense contained only in his statement to the jury, he should have made a proper request therefor.

Nor was it detrimental to the defendant for the court, especially under the particular facts and circumstances of this case where there was no actual eye-witness to the homicide itself, to have given the defendant the benefit of the defense of justifiable homicide, even though he might not have been entitled thereto. This court has so held on numerous occasions. See *Green* v. *State*, 153 *Ga.* 215 (4) (111 S. E. 916); *Ward* v. *State*, 184 *Ga.* 566 (2) (191 S. E. 916), and citations.

4. "Declarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, shall be admissible in evidence in a prosecution for the homicide." Code, § 38-307. To render a dying declaration admissible in evidence, belief of the party that he is dying, as well as the fact that he is actually in extremis, is essential, but such consciousness may be inferred not only from his statements but from the nature and character of the wound and other attendant circumstances. *Campbell* v. *State*, 11 *Ga.* 353 (3); *Dumas* v. *State*, 62 *Ga.* 58 (2); *Robinson* v. *State*, 130 *Ga.* 361 (6) (60 S. E. 1005); *Jones* v. *State*, 150 *Ga.* 775 (105 S. E. 495); *Coart* v. *State*, 156 *Ga.* 536 (3, c) (119 S. E. 723). In this case it appears that the jugular artery of the deceased had been severed; and that he died within a few minutes thereafter. The fact that the deceased might have asked for a doctor does not establish, and might not of itself be taken in the mind of the jury as in any way indicating, that the deceased was unaware of his dying condition, since it is but natural that even a dying man could wish to be attended by a physician. The fact that the deceased did not call the full name of the

defendant, but only the name "Henry," does not render this evidence inadmissible when taken in connection with the other evidence that there was no other person present at the time of the homicide with such name.

5. Under the evidence which has been recounted, including that of the eye-witnesses who testified that the defendant, while brandishing an open knife, followed the deceased who was backing away from another person into an adjoining room, the testimony as to the dying declarations of the decedent, and the testimony with reference to the admissions of the defendant that he did the cutting, the court did not err in failing to charge on the law of circumstantial evidence as related to a case depending solely on testimony of that character. *Toliver* v. *State*, 138 *Ga.* 138 (74 S. E. 1000).

6. The court did not err in failing to charge on the law of voluntary manslaughter with reference to a mutual intention to fight, since there was nothing in the evidence, nor even in the defendant's statement, to justify such an instruction. The evidence for the State raised no such question, and the statement of the defendant, denying any participation in the homicide, was wholly inconsistent with any such contention.

7. The court did not err in failing to charge, on its own motion, as to the law of assault with intent to murder or the law of stabbing. The argument of counsel in conformity with these grounds is that, since no witness followed the defendant, the decedent, and the other party who was backing the deceased into the other room, it was not known which of the two assailants inflicted the mortal wound; that, since the evidence does not warrant a finding of conspiracy between the two assailants, a conviction of murder would not be authorized; and that, therefore, the charge on assault with intent to murder and on stabbing should have been given by the court on its own motion. Counsel cites *Walker* v. *State*, 116 *Ga.* 537 (5) (42 S. E. 787, 67 L. R. A. 426), and *Fudge* v. *State*, 148 *Ga.* 149 (1, 2) (95 S. E. 980). The *Fudge* case merely lays down the well-recognized principle that where one, jointly indicted with another for murder, is on trial, if there be no evidence which would warrant a finding of conspiracy, and the person on trial did not inflict the mortal wound, a verdict of guilt is unauthorized. The case holds that the mere presence and participation of a defendant in the general transaction in which a homicide is committed is not *conclusive* evidence of conspiracy in the perpetration of the actual crime itself by another; but that whether or not there was in fact such a joint participation as amounted to a conspiracy, is to be determined by the jury under the facts and circumstances of the case. In *Gower* v. *State*, 166 *Ga.* 500 (3) (143 S. E. 593), the same Justice who prepared the *Fudge* case shows that "participation in the intent and the criminal act is essential to make one an accomplice," citing several cases. It is not necessary, in order to show joint concert of action, that a preliminary antecedent agreement should have been formulated. A joint concert of action, amounting to a conspiracy, may be shown by circumstantial as well as by direct evidence. See Georgia Digest, Vol. 5, page 688 (Conspiracy, § 47), citing numerous cases. Whether con-

spiracy is in fact established is a question for the jury. In *Hudgins* v. *State*, 61 *Ga.* 182, it was held that, where it was shown that two men ran up behind a man and struck him, one of them using a deadly weapon, and ran off leaving him alone in darkness, the evidence was sufficient proof of conspiracy. See Code (Ann.), § 38-306, for numerous citations on this subject. Thus, where the defendant, brandishing an open knife, followed another person who was backing the unarmed decedent into another room where the decedent suffered five knife wounds, one of which severed his jugular artery, and where the dying declaration of the decedent could have been taken to indicate that the defendant did the killing, and the proved statement of the defendant admitted that he did the cutting, the evidence was sufficient to show both a concert of action between the two assailants and the infliction by the defendant of the mortal wound, and thus to charge the defendant with responsibility for the murder, even though there was no witness to the actual cutting, and though there might have been evidence that the other assailant later admitted having struck at the deceased with a knife, without knowing whether he hit him or not. The evidence thus authorizing the jury to believe that the two assailants were acting in concert, and that the defendant in fact inflicted the mortal wound, these grounds do not authorize setting the verdict aside for the reasons set forth in the motion.

8. Exception is taken because the court charged the jury as follows: "When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury. But, if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely unless corroborated by circumstances or other unimpeached evidence. The credit to be given *such* witness' testimony, where impeached for contradictory statements, shall be for the jury to determine." Counsel contends that by the use of the word "such," which has been italicized in the quotation from the charge, the jury might have understood the court to refer to a witness who had sworn wilfully and knowingly falsely, and who had not been corroborated. This does not appear to be the natural and plainly expressed meaning of the excerpt, since what the court said was that "the credit to be given such witness' testimony, *where impeached for contradictory statements,* shall be for the jury to determine." The instruction is in substantial accord with the provisions of the Code, § 38-1806.

*Judgment affirmed. All the Justices concur, except Head, J., disqualified.*

No. 15265.   OCTOBER 3, 1945.

# 780

*M. C. Barwick,* for plaintiff in error.

*J. Eugene Cook,* attorney-general, *W. H. Lanier,* solicitor-general, *R. N. Hardeman,* and *Victor Davidson,* assistant attorney-general, contra.