20702.   WILSON *v.* THE STATE.

ARGUED NOVEMBER 10, 1959—DECIDED JANUARY 8, 1960.

*Anthony A. Alaimo, Joseph L. Llop, Highsmith, Highsmith, Alaimo & Knox, Cook, Llop & Long,* for plaintiff in error.

*Paul Webb, Solicitor-General, Eugene L. Tiller, Carter Goode, Eugene Cook, Attorney-General, Rubye G. Jackson, Deputy Assistant Attorney-General,* contra.

MOBLEY, Justice. ■ There is no merit in the general grounds. The evidence offered by the State, which included statements made by both Wilson and Harp to police officers, was amply sufficient to support the conclusion that the two defendants, armed with a pistol which Wilson had taken from his father's trunk, went to the end of the bus line for the purpose of robbing the operator of the bus; that they waited until a bus came with no passengers on it, then went to the bus, saw the operator sitting on one of the seats reading a newspaper, knocked on the door, and were admitted to the bus; that Wilson told the operator, "This is a hold-up," and told the operator to walk to the back of the bus; that the operator took a couple of steps, reached for his gun, and, as he turned, he and Wilson both began shooting; that Wilson and Harp then ran from the bus with the deceased following them; that someone living in the vicinity heard the shooting and called the police, who came and found the deceased dead, lying face downward with his gun in his right hand with six empty cartridges in it. The evidence disclosed that his death was caused by a gunshot wound and that the bullet found on him had been shot from Wilson's pistol. Wilson and Harp on the trial of the case both testified that they were forced to give the statements to the officers; that they in fact had gotten in an argument with the deceased, who accused one of them of not paying his fare; and that during this argument Wilson shot the deceased in

self-defense. Evidence of Wilson's mental condition was offered. The verdict of the jury was amply supported by the evidence.

■ The first three special grounds, dealing with the question whether or not the trial court should have charged various aspects of the law of voluntary manslaughter, were argued together by the plaintiffs in error and will be dealt with together here.

The court did not err in refusing to charge, upon request, the following: "I charge you, gentlemen of the jury, if the accused at the time of the homicide was acting under the fears of a reasonable man that either his life was in danger or that a felony was about to be committed upon him, the homicide would be justifiable; that if he killed under the fear that he was in danger of an offense less than a felony, he might be convicted of voluntary manslaughter." In *Teasley* v. *State*, 202 *Ga.* 316, 317 (3) (43 S. E. 2d 319), it was held: "A request to charge must be correct, even perfect; otherwise the refusal to give it will not be cause for a new trial. It must be legal, and precisely adjusted to some principle of law involved in the case." The requested charge on voluntary manslaughter was incomplete, vague, and indefinite; was not a perfect charge on that subject; and would have been erroneous "because of the mingling of the law of defense of person or life with" that on voluntary manslaughter, "which necessarily tends to a confusion of these two phases of homicide." *White* v. *State*, 147 *Ga.* 377, 382 (94 S. E. 222).

The court did not err either in failing to charge without request Code § 26-1007, which defines voluntary manslaughter, and Code § 26-1008, which prescribes the punishment for voluntary manslaughter, or in failing to charge without request that, if Lewis and Wilson got into an argument over whether or not Wilson had paid his fare; and that, as a result of a mutual intention to do so, they entered into mutual combat with pistols; and that, during that fight, Wilson shot and killed Lewis without malice or deliberation, but solely as a result of a sudden, violent, and irresistible impulse from passion arising out of said mutual combat, the killing would be voluntary manslaughter.

The evidence offered by the State was that the defendant Wilson shot and killed the deceased while he and his codefendant

Harp were trying to rob him. The theory of manslaughter and mutual combat, if raised at all, was raised solely by the two defendants in their statements. "In the absence of a proper and pertinent written request for instructions thereon, the court is not bound to give in charge the law of a theory of the case arising solely from the statement of the accused." *Hardin* v. *State,* 107 *Ga.* 718, 719 (3) (33 S. E. 700). See *Watson* v. *State,* 136 *Ga.* 236, 239 (5) (71 S. E. 122); *Gore* v. *State,* 162 *Ga.* 267, 272 (1) (134 S. E. 36); and *Jones* v. *State,* 207 *Ga.* 379 (1) (62 S. E. 2d 187). Nor would the statement of one codefendant constitute evidence in behalf of the other defendant, which would require the court to charge on the theory of the defense raised solely by their statements. *Berry* v. *State,* 122 *Ga.* 429 (1) (50 S. E. 345).

Special grounds 1, 2 and 3 are without merit.

In special ground 4, the defendant Wilson excepts to the following charge: "Evidence of good character may be of itself sufficient to create a reasonable doubt as to the guilt of an accused where otherwise the reasonable doubt would exist . . ." The charge as given was erroneous, as a correct charge would have been" . . . where otherwise a reasonable doubt would *not* exist . . ." Although, no doubt, the able trial judge, who had many times charged juries on this question, inadvertently omitted the word "not" from his charge, the jury had no way of knowing this; and the jury would be required to accept the law as charged. By omitting the word "not" the court in effect charged that, before evidence of good character could create a reasonable doubt in the minds of the jurors, there would first have to be a reasonable doubt raised by the other evidence. "Evidence of good character is not admitted as a mere makeweight, but as evidence of a positive fact, and may of itself, by the creation of a reasonable doubt, produce an acquittal." *Seymour* v. *State,* 102 *Ga.* 803, 805 (30 S. E. 263). The charge complained of deprived the defendant of a substantial defense, which would have authorized the jury to acquit him; and this erroneous charge requires the grant of a new trial.

There is no merit in special ground 5 of the defendant's amended motion, which alleged that the court, in charging the preponderance-of-evidence rule (Code §§ 38-106, 38-107), failed

to instruct the jury that its charge on preponderance of evidence was to be applied only to the defendant's affirmative defense of insanity. Just prior to the charge complained of, the judge charged on the defense of insanity raised by the defendant Wilson. He charged: "that where the issue of insanity is involved, the burden is on the defendant to show to the reasonable satisfaction of the jury, by a preponderance of the evidence, that at the time of the alleged commission of the act charged against him, he was insane. Whether or not that has been done, either by evidence from the State or shown by evidence from the defendant, or both, is a question to be determined by the jury." This was followed immediately by the charge complained of, Code §§ 38-106 and 38-107. When the charge is considered in context, it is obvious that the court did charge that the preponderance-of-evidence rule applied only to the defendant Wilson's affirmative defense of insanity.

■ In special ground 6, the defendant contends that the court, after charging all the contentions of the State, erred in failing to charge the contention of the defendant that he shot the deceased in self-defense. It is the duty of the trial court to charge the contentions of the parties where supported by evidence; and, although in a criminal case it is proper to charge as to the contentions of the defendant without request, it is not required when the same are supported only by the defendant's statement. *Watson* v. *State,* 136 *Ga.* 236 (5) (71 S. E. 122); *Felder* v. *State,* 149 *Ga.* 538 (1a) (101 S. E. 179); *Wynes* v. *State,* 182 *Ga.* 434 (5) (185 S. E. 711); *Alexander* v. *State,* 211 *Ga.* 759 (1) (88 S. E. 2d 277); *Bagley* v. *State,* 212 *Ga.* 206, 207 (3) (91 S. E. 2d 506). The defendant's statement in this case is not supported by any evidence that the killing was in self-defense. Resistance by armed force of an attempt by the defendants to commit robbery upon Lewis would be justifiable under Code §§ 26-1011 and 26-1012, and the defendants could not claim self-defense in defending themselves. *Daniel* v. *State,* 187 *Ga.* 411, 412 (2) (1 S. E. 2d 6). "In an alleged situation requiring the killing of another in self-defense, 'one cannot create an emergency which renders it necessary for another to defend himself, and then take advantage of the effort of such other person to do so.' *Price* v.

*State,* 137 *Ga.* 71 (5) . . ." *Daniel* v. *State,* supra, headnote 1. There is no merit in this ground.

■ In special ground 7, the defendant Wilson contends that the court erred in giving the following charge: "The defendants, and each of them contend, among other things, they, nor neither of them, entered into a conspiracy to rob E. R. Lewis. They further contend that they, nor neither of them, killed E. R. Lewis in furtherance of a common design to rob, and in furtherance of any conspiracy to rob."

Although the language used is awkward, its obvious meaning, when considered as a whole, is that the defendants contended that neither of them killed E. R. Lewis in furtherance of a conspiracy or common design to rob him. Furthermore, the sole defense of the defendants was that they killed the deceased in an argument over payment of the bus fare and not out of an attempt to rob him. The jury could not have been misled by this charge. The seventh ground is without merit.

*Judgment reversed. All the Justices concur.*