## S06A1625. WALKER v. THE STATE.

(640 SE2d 274)

HUNSTEIN, Presiding Justice.

Chauncey Lopez Walker was convicted of felony murder and aggravated assault in the beating death of Alvin Roberts. He appeals from the denial of his motion for new trial.[1] Finding no reversible error, we affirm.

1. The evidence adduced at trial authorized the jury to find that two days before the charged crimes, Roberts robbed and humiliated appellant. Appellant reported the robbery but on the morning of the crimes he met with police and learned they had no immediate plan to arrest Roberts. Directly after this meeting, appellant had his girlfriend drive him to a neighborhood Roberts frequented. After appellant exited the car, he armed himself with a piece of metal fence pipe and walked to a home owned by Dorothy Mims, who was resting with her five-year-old nephew in a bedroom where Roberts sat asleep on a nearby chair. Appellant attacked the resting man with the metal pipe, hitting him at least twice and leaving Roberts limp and unable to defend himself. Mims testified that when Roberts inquired why appellant was hitting him, appellant cursed and replied that Roberts had robbed him. When Mims protested the attack, appellant apologized to her, then kicked and dragged Roberts outside, where he stripped Roberts of most of his clothing claiming it had been purchased with the money Roberts stole from him. Before appellant departed he left the police report of the robbery incident on Roberts' chest. Appellant voluntarily called police about the incident shortly thereafter. Roberts died from blunt force trauma of the head and brain; the forensic pathologist who examined the body found no defensive wounds to indicate any effort by Roberts to block the blows or fight back.

Although appellant, in statements to police and at trial, asserted that he did not expect to find Roberts at Mims' house and struck Roberts only after Roberts pulled out a hand gun, the credibility of witnesses and the question of justification are matters for resolution by the jury; therefore, the jury was free to reject the claim that appellant struck Roberts in self-defense. See *Price v. State*, 280 Ga. 193 (2) (625 SE2d 397) (2006). The evidence was sufficient to enable

---

[1] The crimes occurred on February 11, 2002. Walker was indicted April 16, 2002 in Fulton County on charges of malice murder, felony murder and aggravated assault. He was found guilty of felony murder and aggravated assault; the verdict and sentence of life imprisonment, merging the assault in the felony murder count, were filed August 27, 2003. Walker's motion for new trial, filed September 24, 2003 and amended November 28, 2005, was denied December 19, 2005. A notice of appeal was filed January 9, 2006. The appeal was docketed May 26, 2006 and was submitted for decision on the briefs.

a rational trier of fact to find appellant guilty beyond a reasonable doubt of the felony murder of Roberts. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant enumerates two alleged errors arising out of voir dire. Contrary to appellant's argument, the trial court did not err by ruling it improper for appellant to ask the jury pool whether they would "give [appellant's] testimony less weight." See *Cox v. State*, 248 Ga. 713 (3) (285 SE2d 687) (1982) (proper to disallow question that invades province of jury to determine individual credibility in context of entire case); *Ganas v. State*, 245 Ga. App. 645 (2) (537 SE2d 758) (2000) (proper to disallow question regarding credibility of witnesses who are parties). We find no abuse of the trial court's discretion over the scope of voir dire when it declined to allow appellant to question a proposed juror regarding the irrelevant issue whether the juror had children of the same ages as appellant and the victim.[2] See generally *Ramirez v. State*, 279 Ga. 569 (5) (619 SE2d 668) (2005) (trial court's discretion in voir dire upset only if manifestly abused).

3. Appellant contends the trial court erred by denying his *Batson* challenge[3] regarding Jurors Nos. 3, 5 and 43, who, according to the prosecution, were struck, inter alia, because of their youth,[4] the involvement of their friends or family members in criminal matters,[5] or, in the case of Juror No. 43, the expression of an extreme personal bias against drug dealers in a case where the victim and most of the State's witnesses were involved in the drug trade.[6] Assuming, arguendo, that appellant established a prima facie case of purposeful discrimination, and according the trial court's finding that there was no violation of *Batson* with the great deference to which it is entitled, see *Scott v. State*, 280 Ga. 466 (2) (629 SE2d 211) (2006), we find that the trial court did not clearly err by concluding that the State's reasons for

---

[2] Although on appeal Walker argues the question was relevant because a young child was present at the time of the crimes, the transcript reflects that when questioned by the trial court regarding the relevancy of the question, defense counsel affirmatively replied that it "would be whether [the proposed jurors] have children the age of the defendant, whether they have children the age of the victim and if they are not that age, then I was not going into get [sic] anything about it, your honor."

[3] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[4] The transcript reveals that Juror No. 3 was 21 years old and Juror No. 5 was 22 years old. See *Smith v. State*, 229 Ga. App. 765, fn. 1 (494 SE2d 757) (1997) (age is race-neutral reason for strike).

[5] Juror No. 3 had a friend or family member in the drug trade, see *Morris v. State*, 246 Ga. App. 260 (540 SE2d 244) (2000); Juror No. 5's father had served time for assault within the previous five years. See *Henry v. State*, 265 Ga. 732 (2) (462 SE2d 737) (1995).

[6] The transcript reveals that Walker conceded that Juror No. 43's statements regarding her hatred of drug dealers constituted a race-neutral basis for the State's strike.

striking Jurors Nos. 3, 5 and 43 were race-neutral, non-discriminatory and sufficient. See generally *Flanders v. State*, 279 Ga. 35 (2) (609 SE2d 346) (2005).

4. While the res gestae exception to the hearsay rule clearly did not support the trial court's decision to admit certain testimony by Officer Brown, in which he related statements made to him by witness Mims during his investigation of the crime regarding comments she claimed she overheard appellant make during the attack on the victim, see OCGA § 24-3-3; compare *Cox v. State*, 274 Ga. 204 (3) (553 SE2d 152) (2001), no reversible error was committed by the admission of Officer Brown's hearsay testimony because it was cumulative of Mims' admissible testimony regarding the same comments. See *Wiggins v. State*, 280 Ga. 627 (2) (b) (632 SE2d 80) (2006).

5. We agree with appellant that the prosecuting attorney engaged in improper argument during closing.[7] The prosecutor's statement, claiming that appellant would have denied being at the crime scene had not crime lab testing revealed the presence of the victim's blood on appellant's pants, was not an inference reasonably drawn from the evidence, which showed that appellant spoke to an eyewitness he knew at the crime scene; left on top of the victim's body the police report regarding the robbery that identified appellant by name; and voluntarily telephoned police shortly after the incident about his involvement in the incident. The transcript also reveals that although the prosecutor's statement began as reasonable rebuttal to defense argument regarding the State's failure to test additional clothing for the victim's blood, the statement improperly expanded into matters not in evidence. Defense counsel objected to the misstatement when made but the trial court overruled the objection with no further comment or instruction to the jury. The trial court thus failed to perform the duty imposed by OCGA § 17-8-75.[8]

---

[7] The prosecuting attorney stated in regard to the testing of appellant's clothing for blood that:

> Prosecutor: You see, [law enforcement] can't test every article of [clothing for] every little thing. . . . So they chose an article. The one where they thought they most likely [would] get a result. And what did they choose? His pants. And by choosing his pants they found who? [sic] The victim's blood. Anything beyond that doesn't tell us anything. All it does is prevent [appellant] from saying he wasn't there.
>     Because see they are already saying these other witnesses are lying about it being self defense. If we didn't have those pants, they could very well come in here and say –

Defense counsel: Your Honor, I object.
Prosecutor: – I wasn't there at all.

[8] OCGA § 17-8-75 provides:

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful

However, "[a]lthough such a failure can constitute reversible error ([cit.]), the error is subject to application of harmless error analysis. [Cit.]" *Fincher v. State*, 276 Ga. 480, 482 (4) (578 SE2d 102) (2003). Because the improper statement involved speculation about a potential defense appellant clearly did not assert at trial, because it consisted of only one sentence spoken simultaneously with defense counsel's prompt objection, and because the trial court in preliminary instructions before closing told the jury that the argument of counsel was not evidence, we conclude that it is highly probable that the trial court's error in failing to sustain appellant's objections and perform its duty under OCGA § 17-8-75 did not contribute to the verdict. See *Fincher*, supra.

6. Appellant contends the trial court erred by failing to charge the jury on the lesser included offense of voluntary manslaughter. Voluntary manslaughter occurs when a defendant kills a person "under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a).

> While jury charges on self-defense and voluntary manslaughter are not mutually exclusive ([cit.]), the provocation necessary to support a charge of voluntary manslaughter is different from that which will support a claim of self-defense. [Cit.] "The distinguishing characteristic between the two claims is whether the accused was so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself. Only where this is shown will a charge on voluntary manslaughter be warranted." [Cit.]

*Yates v. State*, 274 Ga. 312, 317 (3) (553 SE2d 563) (2001). We do not agree with appellant that his own testimony presented some evidence to support a voluntary manslaughter charge, as the transcript reveals only that appellant claimed he froze upon seeing Roberts; that he "protected [him]self" when he saw Roberts trying to pull a gun out of his pocket by swinging the pipe to make Roberts drop the gun; and that he removed Roberts' clothing because the items had been purchased with money Roberts obtained from appellant.

"A trial court is not required to give a charge on voluntary manslaughter when a defendant's own testimony shows unequivocally that he was not angered or impassioned when the killing

and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

occurred, and when the other evidence does not show otherwise. [Cits.]" *Yates*, supra, 274 Ga. at 317 (3). See also *Bell v. State*, 280 Ga. 562 (5) (a) (629 SE2d 213) (2006). We conclude that the trial court's refusal to charge on voluntary manslaughter was not error because evidence of a sudden, violent, and irresistible passion resulting from serious provocation was lacking.[9]

7. In his final enumeration, appellant contends his trial counsel was ineffective for failing to produce at trial the sworn testimony an unavailable witness had given at a preliminary hearing. The witness, Angela Hood, had testified that she and her friend, Angel Walker, were in Mims' house at the time of the crimes; that the two women saw Roberts, awake and on his feet, struggling with appellant; and that Roberts had a gun, which fell to the floor during the struggle and was kicked aside. At the hearing on appellant's motion for new trial, counsel was questioned about her decision not to use Hood's corroborating pre-trial testimony. Counsel testified that she spoke with Hood, who reiterated her testimony, and originally intended to call both Hood and Angel Walker. When counsel's repeated attempts to subpoena Hood failed because Hood could not be located, counsel first decided not to proceed under the unavailable witness statute, OCGA § 24-3-10, because Angel Walker was still available to testify about the events. However, when counsel spoke with Walker, Walker said neither she nor Hood had been present at the time of the crimes and that they had been asked to give perjured testimony in support of appellant's justification defense. Because the State had been made aware of Walker when counsel placed her name on a witness list and because the State could use Walker's live trial testimony to directly contradict the statements Hood gave pre-trial, counsel made the decision not to proceed under the unavailable witness statute to use Hood's earlier testimony.

In order to prevail on a claim of ineffective assistance, appellant must show that counsel's performance was deficient and that the deficient performance so prejudiced appellant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985). In making this showing, appellant must overcome the strong presumption that counsel's conduct falls within

---

[9] Although appellant also argues that the trial court erred by failing to charge the jury on mutual combat as related to voluntary manslaughter, see generally *Joyner v. State*, 212 Ga. 269 (2) (91 SE2d 607) (1956), the record fails to reflect a written request for such a charge. See *Young v. State*, 280 Ga. 65 (10) (623 SE2d 491) (2005) and *Wilson v. State*, 215 Ga. 672 (2) (113 SE2d 95) (1960) (failure to give instruction not error absent proper and pertinent written request to charge).

the broad range of reasonable professional conduct. "The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case. [Cit.]" *Nhek v. State*, 271 Ga. 245, 247 (3) (517 SE2d 521) (1999). "The fact that present counsel would pursue a different strategy does not render trial counsel's strategy unreasonable. [Cit.]" Id. at 248 (3).

It is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics, *Simpson v. State*, 277 Ga. 356 (4) (c) (589 SE2d 90) (2003), and that tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances. See generally *Jackson v. State*, 278 Ga. 235 (5) (a) (599 SE2d 129) (2004); see also *Styles v. State*, 279 Ga. 134 (4) (610 SE2d 23) (2005) (counsel's failure to call witness was due to reasonable trial strategy). The trial court did not clearly err when it determined that counsel's decision not to use Hood's pre-trial testimony when there was an available witness who could testify Hood's testimony was perjured, was not an unreasonable decision no competent attorney would make under the circumstances present in this case. See generally *Bales v. State*, 277 Ga. 713, 715 (2) (594 SE2d 644) (2004) (unless clearly erroneous, appellate court will uphold trial court's findings on claim of ineffective assistance of counsel). Accordingly, we find no merit in appellant's enumeration of error.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 22, 2007.

*Charles H. Frier*, for appellant.

*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General,* for appellee.

