Argued November 5. decided December 1, 1908.

# STATE *v.* DOHERTY.

[98 Pac. 152.]

CRIMINAL LAW—INSTRUCTIONS—CONSTRUCTION.

1. An instruction in a criminal case must be interpreted in connection with the remainder of the charge.

HOMICIDE—SELF-DEFENSE—PROVOKING DIFFICULTY—EFFECT.

2. If decedent expressed an intent to strike accused if he repeated abusive language, and on a repetition did strike him, accused, having thereupon shot decedent, cannot establish self-defense, unless he in good faith withdrew or attempted to withdraw from the conflict.

HOMICIDE—INSTRUCTIONS—SELF-DEFENSE.

3. Evidence of a difficulty between the parties shortly before the homicide, in which decedent pushed accused against a wall and choked him, warranted an instruction that if the killing was done in a spirit of retaliation or revenge for past injury, and not because there was reasonable apprehension of impending injury, accused could not plead self-defense.

HOMICIDE—"SELF-DEFENSE"—BASIS.

4. The right to kill in "self-defense" is founded on necessity, real or apparent, and can only be resorted to when the circumstances are such as to warrant a reasonable belief in him assaulted, that the killing is necessary to preserve life or to protect himself from great bodily harm.

HOMICIDE—SELF-DEFENSE—"GREAT BODILY HARM."

5. "Great bodily harm," within the rule governing the right of self-defense, means more than mere injury by the fist, such as is likely to occur in ordinary assault and battery.

HOMICIDE—SELF-DEFENSE—RIGHT TO INVOKE.

6. A threatened injury, to warrant a homicide in self-defense, must involve imminent peril to life or limb; fear of a slight injury or a mere assault not felonious furnishing no excuse, but if, considering the relative age and strength of the parties or the ferocity of the attack, the intended beating is of such character as to endanger life or limb, it will be felonious, and the assaulted person may kill if necessary to preserve his own life or protect himself from such beating.

HOMICIDE—SELF-DEFENSE—EVIDENCE—SUFFICIENCY.

7. Evidence in prosecution for murder *held* insufficient to raise the issue of self-defense.

HOMICIDE—SELF-DEFENSE—RIGHTS OF ACCUSED—INSTRUCTION—CONFORMITY TO EVIDENCE.

8. One attempting to justify a homicide on a plea of self-defense, which the evidence tends to sustain, is entitled to instructions on his theory; but, when the evidence shows murder or manslaughter, an instruction on self-defense should not be given.

HOMICIDE—APPEAL—HARMLESS ERROR—INSTRUCTIONS.

9. One convicted of murder cannot complain of errors in an instruction on self-defense, when the evidence did not raise that issue.

From Morrow: HENRY J. BEAN, Judge.

The defendant, Dan P. Doherty, was convicted of murder in the second degree, and from the judgment, sentencing him to the penitentiary for life, he appeals.

                                         AFFIRMED.

For appellant there was a brief over the names of *Mr. James A. Fee* and *Mr. Sam E. Van Vactor,* with an oral argument by *Mr. Fee.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney-General, and *Mr. Gilbert W. Phelps,* District Attorney, with oral arguments by *Mr. Crawford* and *Mr. Phelps.*

Opinion by MR. CHIEF JUSTICE BEAN.

The defendant was tried and convicted of murder in the second degree for shooting and killing one Oscar Allen in a saloon in the town of Lexington, on December 20, 1907, and from the judgment, sentencing him to the penitentiary for life, he appeals.

Allen was working for one Padburg on a farm near the town, and on the night of the tragedy he and his employer were in town and spent most of the evening at a saloon kept by one Inskeep. Allen had been engaged in a game of cards early in the evening, but about two hours before he was killed had withdrawn from the game, and, while waiting for Padburg to get ready to go home, lay down on a billiard table in the back room of the saloon and went to sleep. Defendant had been in the saloon some time early in the evening, had taken a drink or two, went away, and returned again about 10 or 11 o'clock. After remaining in the front room about an hour, talking to Padburg, Bereshears, and Lane, the bartender, during which time he had several drinks, he offered to buy the drinks "for the house," and Padburg went into the back room where Allen was sleeping and awoke him, telling him to get up: "Dan (the defendant) is buying a drink for the house. Get a drink, and we will go home." Allen got up, went into the front room,

and took a drink with the others. The defendant asked him to treat, which he did, and Allen then requested the bartender to give him a pint of whisky and a package, belonging to him, lying on the safe back of the bar, preparatory to going home. Defendant, however, insisted that he buy another drink, but Allen declined to do so, saying that he had bought one and did not want to buy another. Defendant kept insisting and called him a "cheap John" or "cheap geaser," until Allen became out of humor and told him not to repeat the request. Defendant then jumped around in front of Allen and told him "the dirt under his finger nails knew more than the breed of him." Whereupon Allen using some abusive language, caught him by the throat and pushed him into a corner of the saloon, but did not strike or attempt to strike him. The bartender called to Allen to stop, and told him he had gone far enough, and he left defendant and walked away. Defendant, nevertheless, followed him, "edging along the bar," as one witness said, saying, "You are a bigger man than I am, but I am not afraid of you," and still kept insisting that he buy the drinks, and repeated the term "cheap John" or "cheap geaser." Allen told him not to ask him again to buy any more drinks, and that if he did, using an oath, he would mash his mouth, or something to that effect. Defendant thereupon repeated the request, when Allen struck at him, and the defendant drew his gun and commenced firing at Allen, firing five shots in all, from the effects of which Allen died in a few minutes.

All the witnesses, who were present at the time, except defendant, say that, as far as they could see, Allen did not strike defendant, but missed him, and that defendant was standing when he did the shooting. Defendant testified, on his own behalf, that Allen struck him on the chest, and he fell to the floor, and while on the floor took out his gun and fired one or two shots, then got up, and fired three more, as Allen was moving backward.

The court gave numerous instructions concerning the right of self-defense, stating therein, among other things: That the danger "must not have been brought on by defendant." He must not be the aggressor by some overt act or demonstration. That if defendant used offensive and abusive language to deceased, and deceased expressed an intention to strike him if he repeated such remarks, and defendant did so, and invited and brought on the difficulty, he could not successfully set up self-defense, unless he, in good faith, withdrew, or attempted to withdraw, from the conflict. That if defendant had no reasonable apprehension of impending injury to himself, but did the killing from a spirit of retaliation or revenge, for the purpose of punishing defendant for past injuries done him, he could not avail himself of the law of self-defense. That if Allen assaulted the defendant before the shooting, but in good faith withdrew from the conflict by retreating or otherwise, defendant had no right under the law to shoot, unless the shooting and killing were necessary, or apparently necessary, to protect himself from death or great bodily harm. That the killing must have been unavoidable.

1. These and other like expressions or statements were excepted to by defendant, and he now insists that they do no correctly state the law as applicable to the facts of the case. As we have said, the portions objected to are but excerpts from the instructions, and, of course, must be interpreted in connection with the remainder of the charge. Without incumbering this opinion, by setting out the charge in full, it is sufficient, we think, to say that it fairly and clearly presented the law as favorable to defendant as he was entitled to under the testimony.

2. The instruction, that if defendant used abusive and offensive language to decedent, and decedent expressed his intention to strike him if he repeated such language, and he did repeat it, and deceased struck him, he could not successfully set up the right of self-defense,

unless he had, in good faith, withdrawn, or attempted to withdraw, from the conflict, is but announcing the general rule that one who provokes a difficulty, in which he kills another, cannot plead self-defense, unless he, in good faith, withdrew, or attempted to withdraw, therefrom (*State* v. *Summer,* 74 Am. St. Rep. 731, note), and was a proper instruction under the facts of this case (*People* v. *McGrath,* 47 Hun. 325).

3. The instruction that, if the killing was done in a spirit of retaliation or revenge on account of past injuries, and not because there was reasonable apprehension of impending injury, defendant could not plead self-defense, was clearly within the evidence. There had been a difficulty between the parties a short time before the conflict, during which deceased pushed defendant against a wall and choked him, and, no doubt, the court had this circumstance in mind in giving the instruction in question.

4. If we assume therefore that the facts in this case, as developed by the testimony, called for instructions on the law of self-defense, that question was properly presented to the jury. It is very doubtful, however, whether defendant was entitled to an instruction upon the subject at all. The right to take the life of another in self-defense is founded on necessity, real or apparent, and can only be resorted to when the circumstances are such as to warrant a reasonable belief in the party assaulted that the killing is necessary for the preservation of his life or to protect his person from great bodily harm. Wharton, Homicide, § 225.

5. And by "great bodily harm" is meant more than a mere injury by the fist, such as is likely to occur in ordinary assault and battery. The injury apprehended must be more severe and serious than that usually inflicted in an ordinary fight with the fist, without weapon. 4 Words and Phrases, 3162; Wharton, Homicide, p. 376.

6. According to the Supreme Court of the United States, the threatened injury must be one that would maim, or that would be permanent in its character, or that might produce death (*Acers* v. *United States,* 164 U. S. 388: 17 Sup. Ct. 91: 41 L. Ed. 481), or, as stated by the Supreme Court of Alabama, it must involve imminent peril to life or limb (*Blackburn* v. *State,* 86 Ala. 595: 6 South. 96). Fear of a slight injury is not sufficient, nor will a mere assault, not felonious, furnish an excuse for the taking of life. If the intention of the assailant is only to commit a trespass or simple beating, it will not justify his killing. *Floyd* v. *State,* 36 Ga. 91 (91 Am. Dec. 760) ; *State* v. *Benham,* 23 Iowa 155 (92 Am. Dec. 416). But, considering the relative age and strength of the parties or the ferocity of the attack, if the intended beating is of such a character as to endanger life or limb, then it will be felonious, and the assaulted person is justified in taking the life of his assailant if necessary to preserve his own or protect him from such a beating. *State* v. *Gray,* 43 Or. 446 (74 Pac. 927.)

7. Now there was no evidence in the case, as we read the record, to justify an apprehension that the deceased intended to do anything more than to inflict a slight injury upon the defendant. According to all the witnesses to the affray, except defendant, he did not strike him at all, at the time of the shooting, nor make any effort to do him serious injury. Defendant states that deceased knocked him down. This conflicts with all the other testimony in the case; but, giving to it full weight and credit, it shows nothing more than an ordinary affray, in which the deceased struck him, but with no intention of doing him any serious bodily harm. Deceased was not armed at the time, and did not follow up the assault, or attempt to continue the beating, but was in the act of retreating, when the fatal shots were fired.

8. One who attempts to justify an act of homicide on a plea of self-defense, which the evidence tends to sustain, is entitled to have the jury fully instructed as to the law applicable to his theory of the case; but, when the evidence shows guilt of either murder or manslaughter, an instruction on the law of self-defense should not be given.

9. If, however, one is given, the defendant cannot complain of error therein. Wharton, Homicide, § 222; *Hayden* v. *Commonwealth,* 63 S. W. 20 (23 Ky. Law Rep. 399); *State* v. *Holloway,* 161 Mo. 135 (61 S. W. 600).

The judgment is affirmed.                AFFIRMED.

---

Decided December 1, 1908.