### NAPPER *v.* THE STATE.

No. 15451.   MAY 7, 1946.

*Will Stallings* and *Lester F. Watson,* for plaintiff in error.

*Eugene Cook, Attorney-General, W. W. Larsen, Solicitor-General,* and *Margaret Hartson,* contra.

DUCKWORTH, Justice. (After stating the foregoing facts.) ■ An arrest for a crime may be made by an officer without a warrant in three instances only: (1) if the offense is committed in his presence, or (2) the offender is endeavoring to escape, or (3) for other cause there is likely to be a failure of justice for want of an officer to issue a warrant. Code, § 27-207.

It is admitted that the slain officer had no warrant when he arrested the defendant. There was no proof of his violating any municipal ordinance, and the State made no contention to that effect. It is contended, however, that he was violating a criminal statute of the State (Code, § 58-608), in that he was guilty of public drunkenness as there defined. The evidence shows that some time before the arrest the accused had pushed his face so close to a lady that she was required to retreat to avoid it. This did not occur in the presence of the officer, nor does it appear that the accused was manifesting drunkenness by any of the means set forth in the statute as constituting an essential part of the crime of public drunkenness in the presence of the officer who arrested him. He had voluntarily sat down, was silent, and indicating no desire or intention to escape, and there is not a particle of evidence to warrant the conclusion or to even arouse a suspicion that there was "likely to be a failure of justice for want of an officer to issue a warrant." It follows that the arrest was not authorized under the law, and, hence, was illegal. Such an illegal arrest is in law an assault by the arresting officer upon the person arrested. It constitutes legal justification for the employment by the person arrested of force sufficient in amount to avoid an arrest and repel the assault. *Coleman* v. *State,* 121 *Ga.* 594 (49 S. E. 716); *Mullis* v. *State,* 196 *Ga.* 569 (27 S. E. 2d, 91). If the force employed in resisting such an illegal arrest is in excess of that necessary, the accused is accountable under the law for the excess; and if death results therefrom, he is guilty of manslaughter, unless there was an interval between the officer's assault and the application of the excessive force which caused the death "sufficient for the voice of reason and humanity to be heard," of which the jury in all cases shall be the judges, in which latter case the "killing shall be attributed to deliberate revenge, and be punished as murder." Code, § 26-1007. The law of this State jealously guards "personal liberty," as is manifested by the provisions of the Code specifically

defining the circumstances under which this liberty may be restricted by an arrest; but it is no less jealous in guarding the sacredness of human life, as evidenced by the statutes prescribing penalties for taking the same. In his statement on the trial, the accused merely asserted that he was introxicated and had no knowledge of what took place. He does not state that he refused to submit to the illegal arrest, that he struck the officer in defense of his liberty and to avoid an illegal arrest, nor is there any evidence in this record to indicate that the killing grew out of the illegal arrest. While the law authorizes one to use sufficient force to protect himself against an illegal arrest, this legal right, designed as it is for the high and noble purpose of protecting human liberty, may never be used as an excuse or a cloak to conceal a malicious intent to kill and to excuse the killer. The rule applies only in those cases where the attack upon the officer is, as a matter of fact and not merely as a theory, made in defense of one's liberty against an illegal arrest. To hold here that, because the deceased had illegally arrested the defendant, and notwithstanding that in so far as this record shows the defendant voluntarily submitted to the illegal arrest, nevertheless his subsequent attack upon the officer will be by this court attributed to the illegal arrest, would be to follow a theory and lose sight of the actual facts.

But if it be conceded that the first attack upon the officer was made in resistance to the illegal arrest, it does not follow as a matter of law that the jury was unauthorized to return the verdict for murder in this case. There was certainly a lapse of time between the time when the accused freed himself from the arrest by the policeman and the fatal shooting by the defendant, and under the law it was the exclusive duty of the jury to say whether or not this interval was sufficient for the voice of reason and humanity to be heard. If so, the law would attribute the slaying to deliberate revenge, and the slayer would be guilty of murder. It is obvious that the defendant, a young man, who had demonstrated his physical ability to knock down the officer, a man more than 70 years old, with his bare fist, could not have thought that further attack was necessary to gain his liberty from the illegal arrest. In fact, the evidence shows that the defendant used the officer's pistol with which to kill him, and, hence, it would appear that he had not only knocked the officer to the ground but had also disarmed him,

thus rendering the officer unable, if he so desired, to again arrest the defendant. Whether the interval between the times when the accused had freed himself from the arrest and when he began shooting was a sufficient cooling time to make the offense murder, was a question which the law placed exclusively upon the jury for decision. That verdict was one convicting the defendant of murder, and the evidence was sufficient to authorize the same.

Special ground 2, complaining because of the failure of the State to prove the existence of an ordinance of the municipality of Dudley which the accused was violating at the time of his arrest, is controlled by the rulings above made on the general grounds.

█ The other special ground excepts to an excerpt from the charge of the court wherein it was stated that, "where a person is lawfully arrested either for a felony or a misdemeanor, and he has notice or knowledge or by belief or reasonable grounds for belief has the equivalent of knowledge that the person making the arrest is an officer, it is the duty of the person so arrested to submit quietly. If, under such circumstances and merely to prevent the officer from lawfully arresting him in a lawful way he kills the officer, the crime is murder." The criticisms made are: (a) the charge was calculated to lead the jury to the conclusion that the officer was making a lawful arrest, and that the defendant had a duty to submit and was guilty of murder, and took away from the jury the right to determine if the arrest was lawful or unlawful, and the charge did not give the jury the law as to what it takes to constitute a lawful arrest or an unlawful arrest; and (b) it gave to the jury what the defendant's duty would be if the arrest was lawful, but failed to instruct the jury as to what the rights of the defendant would be if the arrest was unlawful. The excerpt complained of is a sound statement of a rule of law, and is in substantially the same language as was employed by this court in *Mullis* v. *State,* 196 *Ga.* 577 (supra), division 3 of the opinion. Being thus a sound principle of law, it was not erroneous because some other pertinent and sound principle of law was not given in charge. *Currie* v. *State,* 153 *Ga.* 178 (111 S. E. 727); *Whitworth* v. *State,* 155 *Ga.* 395 (117 S. E. 450); *Griffin* v. *State,* 183 *Ga.* 775 (190 S. E. 2). There is no merit in this ground.

*Judgment affirmed. All the Justices concur, except Wyatt, J., who dissents.*