Dewey Spencer GRAY, Willie Lee Gray, Jr.,
Appellants,

v.

STATE of Alaska, Appellee.

Nos. 1003, 1005.

Supreme Court of Alaska.

Jan. 16, 1970.

James R. Clouse, William H. Fuld, Anchorage, for appellants.

Douglas B. Baily, Dist. Atty., Kenneth Jarvi, Asst. Dist. Atty., Anchorage, for appellee.

Before DIMOND, RABINOWITZ, BONEY and CONNOR, JJ.

## OPINION

BONEY, Justice.

After a jury trial in the superior court, appellant, Dewey Spencer Gray, was convicted of two counts of first degree murder in violation of AS 11.15.010 for the killing of Benjamin F. Strong on January 4, 1968. One count was based on the felony murder theory and the other count was based on the theory of premeditated murder. As a result of these convictions, Dewey Spencer Gray was sentenced to serve two life

sentences to run concurrently. From the judgment, this appeal is taken.

At the same trial, appellant, Willie Lee Gray, Jr., was convicted of one count of first degree murder in violation of AS 11.-15.010 and one count of second degree murder in violation of AS 11.15.030 for the killing of Benjamin F. Strong on January 4, 1968. The first degree murder count was based on the felony murder theory and the second degree murder count was based on an intentional killing theory. As a result of these convictions, Willie Lee Gray, Jr., was sentenced to serve two life sentences to run concurrently. From the judgment, this appeal is taken.

On the evening of January 4, 1968, Benjamin F. Strong, an Anchorage city police officer, was on stake-out duty at a Brown Jug Liquor Store in Anchorage. He was not in uniform because he had volunteered for the assignment on his own time. Strong concealed himself in a storeroom in the store. One of the swinging doors to the room was off its hinges, and therefore, Strong stacked cardboard boxes on both sides of the door to support it. He remained on stake out for several hours. He was armed with his own .45 automatic and a .12 gauge shotgun loaded with .00 buck.

At approximately 11:00 p. m., Dewey Gray, brother of Willie Gray, entered the back of the store. When he entered, Dewey held a .25 automatic in his hand and wore a ski mask. The clerk on duty was Ruth McCoy. There was no one else in the store (except, of course, for the hidden officer). Miss McCoy was told by Dewey to turn off the lights and lock the doors. She did not turn off all the lights. She stated "the lighting was—I cannot remember exactly which lights were on, I recall that the lighting was adequate to see, I had no difficulty in seeing either inside or outside the store." As she was walking to the front door to lock it, Willie Gray came in the front door. Willie went to the cash register and started removing the money. Willie was not armed and had little to do

with Ruth McCoy. While Willie was emptying the cash register, Dewey took Miss McCoy to the bathroom near the rear of the store. There Dewey tied up Miss McCoy, who knelt on the floor. Willie stayed at the register. After Dewey had completed tying Miss McCoy, he picked up his gun and started to walk back to where Willie was, and Willie started to leave. Then "in one sequence or another I'm not exactly sure which", Miss McCoy heard boxes tumbling to the floor, heard unidentifiable shouts of more than one voice, but could not discern any words at all. She heard a shot or shots. At some time she turned around and saw Willie shot. She then kicked shut the door to the bathroom and got out of the way. Then she heard "Brown Jug Library hold up" and the phone clattering to the floor. After waiting a while she came out of the bathroom and called the police. The Grays were gone, and Officer Strong was dead.

At trial Dewey elected to testify and admitted that Miss McCoy's description was correct up to the point of being tied up. Dewey stated that after he finished tying up Miss McCoy he turned to leave; Willie was in front of him and was also leaving. Then Dewey heard the sound of boxes falling in the stockroom. As he turned he saw Officer Strong stumbling, crouched on his knees, and firing his .45. The shots were in rapid sequence. Dewey heard no one speak. He saw Willie shot and saw him fall to his knees; he then heard more shots, and at each shot Willie flinched as if hit. It was later stipulated that Willie was shot once in the back of the leg. While looking at Willie, Dewey was shot in the leg, which spun him around and dropped him to his knees. Then "out of reflex and fright" he "threw up a shot too", without aiming, and was immediately thereafter shot again in the shoulder. This second shot caused him to pass out momentarily. Dewey later stated that he did not know who Officer Strong was, that he thought Willie was dead and he would, himself, be killed. When he regained consciousness Dewey crawled to his car and

drove home. Once home he told his wife to call the police because he had been shot; she evidently did this. Meanwhile, Willie had managed to escape on foot, and was found later at a friend's apartment.

At the trial of these cases it was the state's theory to link up the defendants with the crime by means of the clothing worn by the defendants, the car driven by Dewey Gray, the fact that both defendants had been shot by a .45 automatic, Miss McCoy's identification of the gun used by Dewey Gray, and several witnesses placing the Gray brothers near the scene of the crime on the night in question, January 4, 1968. The store clerk, Ruth McCoy, could not identify the defendants directly. The defense vigorously contested the introduction of the items of circumstantial evidence. However at the end of the trial, Dewey Gray testified and obviated most of the bitterly fought evidentiary points. Apparently, Dewey testified in order to bolster the defense's theory of the right of self-defense during an illegal arrest. Dewey admitted the robbery and shooting Officer Strong.

The appellants assign as a principal error on appeal the trial court's instructions 20 [1] and 21 [2]. The trial court instructed the jury in instruction 20 that felony murder is first degree murder if the killing was intentional, unintentional or accidental.

The court in the next instruction (No. 21) told the jury that the essential elements of felony murder to be proved beyond a reasonable doubt are that defendants did unlawfully, feloniously and purposely kill Officer Strong. The relevant statute reads as follows:

AS 11.15.010 *First degree murder.* A person who, being of sound memory and discretion, purposely, and either of deliberate and premeditated malice or by means of poison, or in perpetrating or in attempting to perpetrate, rape, arson, robbery, or burglary kills another, is guilty of murder in the first degree, and shall be sentenced to imprisonment for not less than 20 years to life.

Murder, at common law, was defined as the unlawful killing of a human being with malice aforethought, either express or implied. Express malice could be found in the deliberate intention of the defendant to take the life of the deceased unlawfully, while implied malice could be found either where the evidence showed circumstances indicating that the defendant had a heart regardless of social duty, in that he knowingly did an act which might result in death or grievous bodily harm, or where defendant killed another in the course of perpetrating a felony. In all of these instances it did not matter whether the defendant actually intended to kill the de-

1. Instruction No. 20 provided:

Murder which is committed in the perpetration or attempt to perpetrate robbery, as charged in the Indictments, is murder of the first degree whether the killing was intentional, unintentional or accidental.

Robbery is the felonious taking of personal property of any value in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.

2. Instruction No. 21 provided:

The essential elements which the State must prove to warrant conviction of the defendants, or either of them, of the crime of first degree murder while perpetrating robbery, as charged in Count II of the Indictments, are:

(1) That on or about the 4th day of January, 1968, at or near Anchorage, Alaska, the defendants, or either of them as the case may be, did unlawfully, feloniously and purposely kill Benjamin F. Strong by shooting him with a gun.

(2) In perpetrating robbery.

If the State has proved each of these essential elements beyond a reasonable doubt, then you should find the defendants, or either of them as the case may be, guilty as to Count II of the Indictments, but if the State has failed to prove any of the essential elements as pertains to Count II, beyond a reasonable doubt, then you should acquit the defendants, or either of them as the case may be, as to the offense charged in Count II.

ceased. Once malice could be found, the defendant could be held liable for all results which flowed naturally and probably from his volitional acts. In many cases the killing itself, if unexplained, was enough to support an inference of malice.

■ The Alaska statutory definition of murder in both the first and second degree, adopted in 1899, involves a significant alteration of the common law concept of the crime. The statutes state that no homicide can be murder unless it is purposely done. A plain reading of the first degree murder statute, AS 11.15.010 reveals that whether a killing is effected either of deliberate and premeditated malice or by means of poison, or in perpetrating or in attempting to perpetrate any rape, arson, robbery or burglary, it must in all of those cases be purposely done. Were it otherwise, the word "purposely" would have been placed within one of the disjunctive connective clauses instead of before them. The second degree murder statute, AS 11.15.030 [3], merely states that whoever purposely and maliciously kills another under circumstances not amounting to first degree murder is guilty of murder in the second degree.

■ In addition to the plain grammatical meaning of the Alaska first degree murder statute there are authoritative judicial interpretations of that statute which state emphatically that a specific intent or purpose to kill is an essential element of the crime charged. These are the decisions of the Supreme Court of Ohio, from which the Alaska murder statutes were adopted. Jones v. United States, 175 F.2d 544, 550

(9th Cir. 1949), reveals that AS 11.15.010 was taken directly from the Ohio homicide statute in existence in 1897. Later the same provision was adopted from Alaska by Congress for the District of Columbia.[4] This is one of the few of our original statutes not adopted from the laws of Oregon. Congress is presumed to have adopted the construction of the statute which had been put on it by the courts of the state of its origin.[5]

The leading Ohio case construing this statute is Robbins v. State, 8 Ohio St. 131 (1857). The defendant in that case had administered poison to his mistress in order to produce an abortion, in consequence of which she died. Appeal was taken from the trial court's instructions that a purpose or intent to kill the victim was not necessary to constitute murder in the first degree where the death was caused by poison. The statute, Rev.Stat. 1854, § 269, involved was identical to the Alaska first degree murder statute except in one respect: it read, "Whoever, being of sound memory and discretion, purposely, and of deliberate and * * *" The Alaska statute is even less ambiguous because it states: "That whoever, being of sound memory and discretion, purposely, and *either* of deliberate and * * *." (Emphasis supplied).

The court in Robbins v. State, reversed the conviction on the ground that the purpose to kill is, by the express terms of the statute, made an essential ingredient of the crime of first degree murder, whether committed in deliberate and premeditated malice, by means of poison, or in perpetrating or attempting to perpetrate any rape, arson,

3. AS 11.15.030 provides:
 Except as provided in §§ 10 and 20 of this chapter, a person who purposely and maliciously kills another is guilty of murder in the second degree, and shall be sentenced to imprisonment for a term of not less than 15 years to life.

4. 31 Stat. 1321, c. 854, § 798 (March 3, 1901):
 Murder in the first degree * * *. Whoever, being of sound memory and discretion, *purposely*, and either of de-

liberate and premeditated malice or by means of poison, or in perpetrating or in attempting to perpetrate any offense punishable by imprisonment in the penitentiary, kills another is guilty of murder in the first degree. (Emphasis supplied.)

5. Capital Traction Co. v. Hof, 174 U.S. 1, 36, 19 S.Ct. 580, 43 L.Ed. 873, 885–886 (1899); Jennings v. Alaska Treadwell Gold Mining Co., 170 F. 146 (9th Cir. 1909).

robbery or burglary.[6] To reach this result the court undertook an exhaustive analysis of the statute and of common law murder. First it looked to the reason and spirit of the statute. It noted that unlike common law murder, for which no specific intent or purpose to kill was necessary, this statute does require a specific intent. Secondly, it interpreted the statute according to its grammatical signification. The word "purposely" is an adverb of the word "kills", which is the predicate of the subjects contained in each of the intervening clauses. Thus the word "purposely" qualifies each of the subjects contained in the intervening clauses. The conclusion is inescapable that all types of killing named in the statute must be purposely done.

The word "purposely" is not just a superfluity which can be freely dispensed with. Rather, it is an essential part of culpability under this statute. Jones v. State, 51 Ohio St. 331, 38 N.E. 79 (1894), indicates that while malice or malice aforethought are words of art, and while malice can be presumed from the fact of killing, the intent or purpose to kill required by this statute cannot be implied or inferred from the fact of killing alone. The purpose to kill is, therefore, an essential averment in any indictment for the violation of this act.

In State v. Farmer, 156 Ohio St. 214, 102 N.E.2d 11 (1951), the Ohio court reviewed the Ohio felony murder rule from *Robbins* to the date of that decision. The court reaffirmed its prior decisions and held that in felony murder an intent to kill must be shown. The court also stated that such an intent could be proved by the manner in which the crime is committed. Using the rule that one intends the natural, reasonable and probable consequence of his acts, the court stated that the use of a deadly weapon without circumstances of explanation or mitigation may justify a

jury in inferring an intent to kill. However, the fact of the killing alone, does not support the finding of purpose or intent to kill. In *Farmer* the victim was killed by blows from a stick. The stick was never found and there was therefore little evidence to conclude it was a dangerous weapon. "Even in the absence of evidence as to the size and character of the stick, evidence as to the nature of the injuries received by Stayner [the victim] might have justified such a determination." 102 N.E. 2d at 16. However, the court concluded there was nothing about the injuries themselves which would imply that a dangerous weapon had been used. Thus there was nothing from which a jury could have concluded the defendant intended to kill. It can be seen from this analysis that the Ohio court does look for some evidence besides the fact of killing to show intent in the mind of the defendant. Use of a deadly weapon if unexplained is one circumstance which tends to prove intent to kill.

In Turk v. State, 48 Ohio App. 489, 194 N.E. 425 (1934), aff'd in State v. Turk, 129 Ohio St. 245, 194 N.E. 453 (1935), defendant burned his store to secure insurance money, and as a result one of the occupants of the upper floor of the building was burned to death. Defendant was convicted of first degree murder under an instruction of the trial court that if defendant purposely set the fire and the fire was a proximate cause of the victim's death it was first degree murder. On appeal the conviction was reversed because the trial court had erred in giving this instruction embodying the general felony murder doctrine instead of the Ohio rule. The court said, "[T]here must be a purpose and intent to kill before the crime of murder is complete." 194 N.E. at 426.

The courts of the District of Columbia defined "purposely" when used in its felony murder statute to mean an intentional

---

6. *Accord*: Fouts v. State, 8 Ohio St. 98 (1857), holding an indictment of first degree murder fatally defective under this statute because it failed to allege that a killing arising out of an assault and battery was purposely done.

killing.[7] In 1940, Congress, at the request of the Attorney General of the United States, amended the law of the District of Columbia so that it would comply with the felony murder concept which requires no specific intent to kill.

Jordon v. United States, 66 App.D.C. 309, 87 F.2d 64 (1936), cert. denied, 303 U.S. 654, 58 S.Ct. 762, 82 L.Ed. 1114 (1938), involved a killing inflicted in the course of committing armed robbery in a restaurant, for which defendant was convicted of first degree murder under the District of Columbia statute (adopted from Alaska). The lower court instructed that if in the course of committing robbery the murder was purposely done it was first degree murder; but if in perpetrating the crime the killing was not done purposely but by accident or otherwise, it was not first degree murder. On appeal, this instruction was held to be correct. The court followed the Ohio cases and distinguished the authorities from other jurisdictions where an intent to kill is not necessary in felony murders. The court said:

> This purpose to kill, in the view we take of the statute, is a state of mind which must be proved as a fact before there may be a conviction of first degree murder under the statute, but proof of purpose need not be direct; it may be inferred from the circumstances attending the killing.

87 F.2d at 66. In determining guilt the jury had the duty to consider all the facts in the case and judge defendant's purpose from his acts. This case is squarely in line with the traditional Ohio authorities, for it involved a killing done under circumstances which were equivocal on the element of specific intent and which, therefore, should be submitted to the jury for a determination.

■■ Applying these principles, we hold that instruction 20 which stated that the killing could be accidental or unintentional was erroneous. The jury should have been told that intent to kill is a necessary element of felony murder under Alaska law. Because Dewey used a deadly weapon, the inference could be drawn that he intended to kill. However, he attempted to explain the use of the gun in a way which might negate a finding of intent to kill. Thus his intent at the time of the shooting was a jury question.

There is no evidence in the record that Willie was armed or that he killed Officer Strong. The only way he can be convicted of the crime of first degree murder is as an accessory to felony murder which would make him a principal under Alaska law.[8] Willie's guilt is dependent upon Dewey's guilt.

Since the trial court submitted the felony murder count to the jury under a theory which is contrary to the law of Alaska, the convictions of the first degree felony murder counts against both appellants must be reversed. It should be noted that proper and timely objection was made to instruction 20. It was pointed out to the trial court that instruction 20 was in conflict with instruction 21 which did require the element of purpose. It is not for this court to rewrite Alaska's felony murder statute to make it conform to the felony murder concept as applied in other jurisdictions. This is within the province of the legislature. Alaska and Ohio stand alone with their unique felony murder laws.

---

**7.** Mumforde v. United States, 76 U.S.App. D.C. 107, 130 F.2d 411, cert. denied, 317 U.S. 656, 63 S.Ct. 53, 87 L.Ed. 527 (1942); Bishop v. United States, 71 App.D.C. 132, 107 F.2d 297 (1939); Marcus v. United States, 66 App.D.C. 298, 86 F.2d 854, 859 (1936).

**8.** AS 12.15.010 provides:
The distinction between an accessory before the fact and a principal, and be-

tween principals in the first and second degree is abrogated; and all persons concerned in the commission of a crime, whether they directly commit the act constituting the crime or, though not present, aid and abet in its commission, shall be prosecuted, tried, and punished as principals.

The appellants assign as error the failure of the court to grant their motion for judgment of acquittal. They contend that there was insufficient evidence to allow the premeditated first degree murder count to go to the jury because there was an absence of evidence on the necessary elements of deliberation and premeditation.

This court has consistently held that on a motion for a judgment of acquittal the judge must take the view of the evidence and the inferences therefrom most favorable to the state. If the court determines that fair-minded men in the exercise of reasonable judgment could differ on the question of whether guilt has been established beyond a reasonable doubt, then the case must be submitted to the jury.[9] This court has held that where the evidence against a defendant is entirely circumstantial a conviction can be sustained where the evidence is such as to exclude every reasonable theory consistent with the accused's innocence.[10]

As to Dewey Gray, we hold that the evidence was sufficient to warrant submitting the premeditated murder count to the jury.

It is true that there is no direct evidence in the record definitely proving premeditation by Dewey. However, fair-minded persons could conclude beyond a reasonable doubt that Dewey was guilty of deliberate and premeditated murder from the circumstances surrounding the killing of Officer Strong. Dewey was armed with a loaded weapon. He intended to and did use this weapon to effectuate a robbery of the liquor store. He threatened the store clerk, Miss McCoy, with violence by drawing the loaded gun on her. Dewey testified at trial that after the first two or three shots, fired by Officer Strong, his brother Willie fell to the floor. At the time, Dewey thought that Willie was dead or seriously injured. Dewey testified that he thought he was going to be killed also. Dewey claimed that he did not fire a shot until he was shot in the leg. Before the shots were fired, Dewey heard boxes tumble and said nothing. Seven shots were apparently fired by Officer Strong.

We hold that the jury was properly instructed on the question of premeditation.[11] The jury was told that

---

9. Allen v. State, 420 P.2d 465, 467 (Alaska 1966); Jennings v. State, 404 P.2d 652, 654 (Alaska 1965); Bush v. State, 397 P.2d 616, 618 (Alaska 1964).

10. Allen v. State, 420 P.2d 465, 467 (Alaska 1966); Davis v. State, 369 P.2d 879, 882 (Alaska 1962).

11. Instruction No. 30 provides:
 Murder in the first degree as charged in the Indictments must be accompanied by a clear deliberate intent to take life. The intent to kill must be the result of deliberation and must have been formed upon a pre-existing reflection and not under a heat of passion or other condition such as precludes the idea of deliberation.

 The law does not require that such deliberation shall exist for any particular period of time or that any prescribed period of time shall elapse between the formation of the intent to kill and the act of killing. It is necessary only that the act of killing be preceded by, and be the result of a concurrence of will, deliberation and premeditation on the part of the slayer to constitute murder in the first degree, regardless of how rapidly or slowly these mental processes succeed each other or how quickly or tardily they are followed by the act of killing.

 The law does not undertake to measure in units of time the length of the period during which the thought must be pondered before it can ripen into an intent to kill which is truly deliberate and premeditated. The time will vary with different individuals and under varying circumstances. The true test is not the duration of time, but rather the extent of the reflection. A cold, calculated judgment and decision may be arrived at in a short period of time, but a mere unconsidered and rash impulse, even though it includes an intent to kill, is not such deliberation and premeditation as will fix an unlawful killing as murder of the first degree. To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice,

the law does not undertake to measure in units of time the length of the period during which the thought must be pondered before it can ripen into an intent to kill which is truly deliberate and premeditated. The instruction emphasized that it was not the duration of time, but rather the extent of reflection that mattered. That Dewey had time to reflect between the time the boxes tumbled and the time he fired the shot which killed Officer Strong can be inferred from his own testimony.[12] He admitted that the thoughts passed through his mind that his brother was killed or seriously wounded and that he would be killed. The jury could have concluded that during this time he formed the necessary premeditated intent to kill his assailant.

■ In the case of Willie Gray, we hold that the evidence was insufficient as a matter of law to go to the jury on the theory of first degree premeditated murder. The motion for judgment of acquittal should have been granted. Accordingly his conviction of the lesser included offense of second degree murder must be set aside. There is no evidence in the record that Willie aided or abetted his brother in the killing of Officer Strong. In fact, there was no evidence that he was even armed. At the time Strong was shot, Willie was lying on the floor, already wounded by one of the bullets from Strong's gun.

We note that there is no legal theory by which the jury could conclude that Willie was guilty of second degree murder. Willie could only have been guilty as an accessory to Dewey's crimes. Since Dewey was convicted of premeditated murder, Willie could only have been convicted of premeditated murder and not the lesser

included offense of second degree murder. The jury's finding is ample evidence that they did not understand or follow the court's instructions.

Appellants assign as a further error the trial court's refusal to instruct that manslaughter is a lesser included offense to felony murder. The trial court instructed the jury that only two verdicts were possible as to the charge of felony murder: guilty or not guilty. This instruction was objected to by counsel for appellants, and a manslaughter instruction was requested. Under the circumstances of the present case, we believe that it was error to fail to instruct on manslaughter as a lesser included offense to felony-murder.

■ As we have stated above, felony murder under Alaska law is a purposeful killing committed in the perpetration of certain felonies. Such a purposeful killing if not done in the perpetration of one of the enumerated felonies, may constitute second degree murder. Such a killing if done in the perpetration of a felony but not with specific intent to kill, may be manslaughter.[13] Thus depending on the facts of a given case both second degree murder and manslaughter could be lesser included offenses to first degree felony murder.

■ In the present case we find no evidence which would have justified a second degree murder instruction. The shooting of Officer Strong was certainly done in the furtherance of the admitted armed robbery. The disputed elements of the crime were the intent of Dewey Gray and the claimed justification for the shooting. Under appellants' theory, appellants would be innocent of felony murder. Under the state's theory they would be guilty of first degree felony murder or manslaughter, depending on whether Dewey had an intent to take the

---

and having in mind the consequences, decide to and commit the unlawful act causing death.

12. This court has held that when a defendant proceeds to put on his case, he risks curing any defects which may have existed in the prosecution's case-in-chief because

the record as a whole is viewed on appeal to determine the sufficiency of the evidence. Martin v. City of Fairbanks, 456 P.2d 462, 464 (Alaska 1969).

13. This is the result reached by the Ohio cases, e. g., State v. Farmer, 156 Ohio St. 214, 102 N.E.2d 11 (1951).

life of Officer Strong. Dewey's testimony was some evidence that he did not intend to kill Officer Strong; thus we conclude that the evidence warranted an instruction on manslaughter as a lesser included offense to felony murder.

The appellants claim they were denied a fair trial by comments made by the prosecutor in his opening statement and final argument. There is no need to pass upon this claim of error, because the comment made in opening statement was directed solely to Willie Gray's failure to voluntarily disclosed his bullet wound during a police interview.[14] Willie Gray's convictions are to be set aside on other grounds; this makes unnecessary any discussion of the possible prejudicial effect of the remarks or the fact that the claim of error was not objected to at trial.

 Appellants also contend that certain comments made by the prosecutor in final argument amounted to an impermissible comment on the failure of Willie Gray to testify at trial. The appellants moved for a mistrial. The comments to which the appellants objected are as follows:

> * * * I ask you to consider, what was the purpose of this testimony that I've just commented on, and I suggest to you that it was this, that the defendants in this case, did not know at that time, during that course of the trial, what testimony they would give, what story they would tell, what defense they would attempt to make out. That they attempted to controvert every fact until the overwhelming evidence placed them in the Brown Jug Liquor Store on the evening

of January 4th, 1968 and no other alternative was available to them. I ask you if they were willing to come before the Court and this jury and tell their story at the beginning, what the purpose of any of this testimony was, and I submit that they were not * * *

The trial judge denied the motion for a mistrial but immediately issued a cautionary instruction to the jury.

Insofar as these comments relate to Willie Gray's failure to testify we again need not decide the issue because his convictions are to be set aside on other grounds. With regard to Dewey Gray, who did testify at trial, we do not find that the comments exceed the latitute allowed to the prosecutor to comment on the evidence and the trial tactics of defense counsel.

Appellants at trial attempted to rely on the privilege of self-defense as a justification for the admitted shooting of Officer Strong. The trial court refused to instruct the jury on the elements of self-defense and the amount of force that may be used in effecting arrest. On appeal it is appellants' contention that a person may claim self-defense when he reasonably defends himself from the use of excessive force by an arresting officer.

 The overwhelming weight of authority indicates that a person subjected to an unlawful arrest may use reasonable force to defend himself.[15] In the case of Miller v. State, 462 P.2d 421 (Alaska December 15, 1969), we modified this rule by holding that there was no right to resist a peaceful arrest, even though the arrest was unlawful. The Miller case did not deal, however, with the circumstances

---

14. Miranda v. Arizona, 384 U.S. 436, 468, 86 S.Ct. 1602, 16 L.Ed.2d 694, 720 n. 37, 10 A.L.R.3d 974 (1966).

15. E. g., John Bad Elk v. United States, 177 U.S. 529, 20 S.Ct. 729, 44 L.Ed. 874 (1900); Starr v. United States, 153 U.S. 614, 623, 14 S.Ct. 919, 38 L.Ed. 841, 844 (1894); United States v. Heliczer, 373 F.2d 241 (2d Cir. 1967), cert. denied, 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967); Curtis v. United

States, 222 A.2d 840, 842 (D.C.App. 1966); State v. Robinson, 6 Ariz.App. 424, 433 P.2d 75 (1967); Presley v. State, 75 Fla. 434, 78 So. 532, 534, L.R.A. 1918D, 975 (1918); Napper v. State, 200 Ga. 626, 38 S.E.2d 269, 271 (1946); People v. Smith, 315 Ill.App. 671, 43 N.E.2d 420 (1942); People v. Cherry, 307 N.Y. 308, 121 N.E.2d 238 (1954); State v. Rousseau, 40 Wash.2d 92, 241 P.2d 447, 449 (1952).

of the present case, where it has been claimed that the arrest was unlawful because Officer Strong used unprivileged force to effect the arrest. An officer in making an arrest is privileged by statute to use only that force which is necessary to restrain the arrested person.[16] To the use of necessary force the arrested person cannot claim the privilege of self-defense. If more than necessary force is used, then the officer commits an unprivileged assault on the arrested person.[17] To an arresting officer's unprivileged use of force, the arrested person must have the right to use reasonable force to defend himself.[18]

However, the state contends that one who provokes "the difficulty" may not claim self-defense and that appellants provoked the difficulty by committing the armed robbery.[19] Authority clearly supports the contention in this respect and indicates that a person who provokes a difficulty thereby forfeits his right to self-defense.[20]

---

16. The relevant Alaska statutes provide as follows:

AS 12.25.070—*Limitation or restraint in arrest.* No peace officer or private person may subject a person arrested to greater restraint than is necessary and proper for his arrest and detention.

AS 12.25.080—*Means to effect resisted arrest.* If the person being arrested either flees or forcibly resists after notice of intention to make the arrest, the peace officer may use all the necessary and proper means to effect the arrest.

These statutes on the amount of force which may be used in making an arrest are in accord with the statute on justifiable homicide by a public officer which provides:

AS 11.15.090—*Justifiable homicide by public officer or agent.* The killing of a human being is justifiable when committed by a public officer

\* \* \* \* \*

(4) when necessarily committed in arresting a person fleeing from justice who has committed a felony.

The section on justifiable homicide by any person provides:

AS 11.15.100.—*Justifiable homicide.* The killing of a human being is justifiable when committed by any person

(1) to prevent the commission of a felony upon him \* \* \*

(2) to prevent the commission of a felony upon his property \* \* \*

(3) in the attempt, by lawful means, to arrest a person who has committed a felony \* \* \*.

This statute on its face seems to eliminate the requirement that the killing be necessary to effect the arrest or to prevent the felony. If the statute were so interpreted it would be in conflict with all the other arrest statutes and the law of self-defense. We adopt the Oregon interpretation of this statute which requires a finding of necessity before the homicide can be justifiable. State v. Yee Guck, 99 Or. 231, 195 P. 363 (1921);

State v. Doherty, 52 Or. 591, 98 P. 152 (1908); State v. Gibson, 43 Or. 184, 73 P. 333 (1903).

17. In Merrill v. Faltin, 430 P.2d 913, 917–918 (Alaska 1967) this court approved of the theory of imposing civil liability on one who uses excessive, unprivileged force in his own defense. Dean Prosser has stated, "The defendant is not privileged to inflict a beating which goes beyond the real or apparent necessities of his own defense. \* \* \* Revenge is not defense. \* \* \*" W. Prosser, Torts § 19 (3d ed. 1964).

18. This principle is aptly stated in 1 Wharton, Criminal Law and Procedure § 216 at 474:

If an officer uses unnecessary force in making a lawful arrest and the person sought to be arrested believes, and has reason to believe, that he is in danger of being killed or of receiving great bodily harm, he may defend himself, even to the point of taking the life of the officer. The rule of self-defense applies to the case of an officer attempting to make an arrest, who abuses his authority and transcends the bounds thereof by the use of unnecessary force and violence as well as to the case of a private individual who unlawfully uses such force and violence.

19. The state has cited Rowe v. United States, 125 U.S.App.D.C. 218, 370 F.2d 240, 241 (1966); State v. Jones, 95 Ariz. 4, 385 P.2d 1019 (1963); Wilson v. State, 215 Ga. 672, 113 S.E.2d 95, 99 (1960).

20. 4 Warren on Homicide § 338, 278–279, provides, for example:

It is not necessary to instruct on the law of self-defense or a particular phase thereof, where the evidence shows the contrary, and requests for such instructions are properly refused. Thus, for instance it is proper to refuse to instruct on the law of self-defense

This doctrine has been extended to preclude a person who commits a felony from claiming self-defense not only to the intended victim of the felony, but also as to any person intervening in an attempt either to prevent the crime or to apprehend the criminal.[21]

This court is faced, then, with two competing principles. On the one hand is the doctrine that a person has the right to use necessary force to protect himself against an unlawful arrest involving excessive force; on the other hand is the doctrine that a person provoking a difficulty forfeits his right to self-defense. We believe that, in the particular circumstances before us now, the latter doctrine must prevail. In our recent opinion in Miller v. State,[22] we said in part:

> The control of man's destructive and aggressive impulses is one of the great unsolved problems of our society. Our rules of law should discourage the unnecessary use of physical force between man and man. Any rule which promotes rather than inhibits violence should be re-examined. Along with increased sensitivity to the rights of the criminally accused there should be a corresponding awareness of our need to develop rules which facilitate decent and peaceful behavior by all.

▇ Here we are again presented with a situation which calls for further development and refinement in light of the guidelines which were articulated in *Miller*. Given the exigencies of the circumstances which flowed from appellants' still incomplete armed robbery, we can perceive of no persuasive policy reasons for according appellants the privilege of self-defense.[23] We hold, therefore, that a person who commits an armed robbery forfeits his right to claim as a defense the necessity to protect himself against the use of excessive force by either the intended victim of the robbery or by any person intervening to prevent the crime or to apprehend the criminal, absent a factual showing that at the time the violence occurred, the dangerous situation created by the armed robbery no longer existed.

▇ Accordingly, in the instant case, even if it is conceded that there is some evidence that Officer Strong used excessive force in attempting to arrest the Gray brothers, the perilous situation created by the armed robbery continued to exist at the time the shooting occurred. The uncontradicted evidence shows that Officer Strong was killed by Dewey Gray while the Grays were in the course of perpetrating an armed robbery.[24] This is one of the most dan-

---

> * * * where there is undisputed evidence that defendant provoked the difficulty.

Numerous cases support this doctrine. *See*, for instance: State v. Jones, 95 Ariz. 4, 385 P.2d 1019, 1021 (1963), cert. denied, 379 U.S. 852, 85 S.Ct. 97, 13 L.Ed.2d 55 (1964); People v. McAuliffe, 154 Cal.App.2d 332, 316 P.2d 381, 386 (1957), cert. denied, 361 U.S. 920, 80 S.Ct. 266, 4 L.Ed.2d 188 (1959); People v. Holt, 25 Cal.2d 59, 153 P.2d 21 (Cal.1944); State v. Wilson, 26 Wash. 2d 468, 174 P.2d 553, 561 (Wash.1946).

21. *See*: Clingham v. State, 207 Ark. 686, 182 S.W.2d 472 (1944); Spear v. State, 184 Ark. 1047, 44 S.W.2d 663 (1931); People v. Ketchel, 59 Cal.2d 503, 30 Cal. Rptr. 538, 381 P.2d 394 (1963); Wilson v. State, 215 Ga. 672, 113 S.E.2d 95 (1960); State v. Werner, 144 La. 380, 80 So. 596, 6 A.L.R. 1601 (1919); Smith v. State, 209 Tenn. 499, 354 S.W. 2d 450 (1961).

22. 462 P.2d at 426 (December 15, 1969).

23. Both the prosecution's evidence and that of appellant Dewey Gray established that the armed robbery had not been completed. In People v. Ketchel, 59 Cal.2d 503, 30 Cal.Rptr. 538, 548, 381 P.2d 394, 404 (1963), the Supreme Court of California said in part:

 Appellants, however, do not recognize the fact that " '[r]obbery, unlike burglary, is not confined to a fixed *locus*, but is frequently spread over considerable distance and varying period of time. The escape of the robbers with the loot, by means of arms, necessarily is as important to the execution of the plan as gaining possession of the property.' " (Citations omitted)

 To the same effect, see: 1 Wharton, Criminal Law § 206, at 456.

24. For an excellent example of a finding, within the factual circumstances of the instant case, that robbery, unlike bur-

gerous crimes known to man. Both Dewey and Willie Gray were still inside the robbed premises and in possession of the stolen money when surprised by Officer Strong, and the gun Dewey used in the robbery was still in his hand. It is no answer that the suddenness of Officer Strong's attempts to stop the commission of this crime prevented appellants from manifesting their intent to abandon the robbery or to surrender. Here appellants created the very situation which precluded any effective communication at the time in question.[25]

■ Thus, on the facts of this case, we conclude that there is no room for difference of opinion among reasonable men that appellants were in fact engaging in and attempting to complete an armed robbery at the time they were intercepted by Officer Strong, and that they are thereby precluded from claiming self-defense. We believe this conclusion to be a sound one. Where, as in this case, the defendant commits a felony which includes an immediate threat of violence, he has created a situation so fraught with peril as to preclude his claim of self-defense to any act of violence arising therefrom. Our holding is limited to the situation where the armed robbery is still in progress and where there is grave danger of violence, injury, or loss of life because a weapon is being used to consummate the felony.

■ Before a self-defense instruction will be required, two evidentiary tests must be met. First there must be some evidence that excessive force was used to effect an arrest or stop the commission of a felony. Second, there must be some evidence from which a jury could conclude that the dangerous situation created by the felony no longer existed. In the case now before us the second requirement has not been met.

To permit appellants to justify their slaying of Officer Strong by claiming self-defense on the facts of this record would be to fashion a rule of law unresponsive to society's need for protection against just such extraordinarily dangerous conduct. This would not, in our view, tend to "facilitate decent and peaceful behaviour by all."[26] To bestow such a privilege to slay would be manifestly unsound.

■ Appellants claim as further error the fact that "two inconsistent counts of first degree murder" went to the jury, and that upon conviction on both counts appellants were sentenced twice for the killing of one man. We agree with the state's contention that the crimes of felony murder and premeditated murder do not require the showing of inconsistent facts.[27] A single act of killing could be both premeditated and committed in the perpetration of one of the enumerated felonies. We also agree that the prosecution should be able to proceed on both theories of first degree murder. In cases where there is sufficient evidence to justify the submission of both theories to the jury, the prosecution should not be forced to elect between the theories but may have both theories submitted to the jury.[28]

It does not follow, however, that appellants can be convicted on two counts of murder for the killing of one man. If both theories of first degree murder go to the jury, the question which has perplexed the courts is what kind of verdict should the

glary, is a continuing crime, and not fixed to a certain locus, see: People v. Ketchel, *supra*, n. 23.

25. People v. Ketchel, 59 Cal.2d 503, 30 Cal.Rptr. 538, 381 P.2d 394, 405 (1963); McCoy v. State, Fla.App., 175 So.2d 588, 591 (1965), cert. denied, 384 U.S. 1020, 86 S.Ct. 1972, 16 L.Ed.2d 1043 (1966).

26. Miller v. State, 462 P.2d at 426 (December 15, 1969).

27. Fuller v. United States, 132 U.S.App. D.C. 264, 407 F.2d 1199, 1224 (1967), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969); State v. Reyes, 209 Or. 595, 308 P.2d 182, 189 (1957).

28. State v. Gager, 45 Haw. 478, 370 P.2d 739 (1962); People v. Sullivan, 173 N.Y. 122, 65 N.E. 989, 63 L.R.A. 353 (1903).

jury be asked to render. The several theories of the commission of a single crime can be framed as separate counts of an indictment, as was done in this case. Since there is still but one crime, the jury must reduce the multiple counts to a single verdict. If the jury must be told that the accused can only be guilty of one or the other counts, then problems can arise if the jury believes both counts have been proved. As pointed out in Fuller v. United States, 132 U.S.App.D.C. 264, 407 F.2d 1199, 1224 (1967), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969), questions of double jeopardy are raised if the jury is forced to acquit on one theory in order to convict on a theory which on appeal is found erroneous.[29] If the jury is only asked for one general verdict, then on appeal there is no way to tell upon which theory the jury reached its verdict. In such a case an error relating to either count would void the entire verdict. Accordingly the state has argued that permitting a guilty verdict on each count of murder would serve the useful purpose of avoiding retrials by permitting this court to uphold one conviction where there is error concerning the other conviction.

█ We believe that only one conviction of murder should be allowed for the killing of one man. Although there are several ways of committing first degree murder, it is still only one crime; and only one sentence can be imposed. We believe it is sound to allow multiple theories to be presented to the jury and not to force the jury to choose between them. However, this effect can be achieved by the use of special findings, rather than multiple convictions for one crime. The jury can

be told that the accused is charged with one crime, first degree murder. The jury can be asked to enter findings which would show whether the murder was a felony-murder, or a premeditated one or both. Also by the use of findings on the elements of the offense, guilt on lesser included offenses can be ascertained at the same time. The use of special findings in criminal cases is not specifically authorized by our criminal rules except as to insanity and crimes relating to property.[30] However, the use of such findings in criminal cases has been approved by several courts[31] and can be justified by reference to Alaska Criminal Rule 51, which authorizes the courts to adopt procedures which promote the efficient operation of the courts of the state.

The use of special findings is preferable to allowing multiple convictions or requiring the jury to choose between theories. Even if we restricted multiple convictions to cases where the sentences were to be concurrent, we would have no way of ascertaining whether the accused was being punished twice for one crime. Concurrent sentences may prejudicially affect the prisoner's chances of parole, and multiple convictions can cause prejudice in a later proceeding under a recidivist statute.[32] Furthermore, the proper use of special findings will be much clearer to the jury than the division of one crime into several.

█ We find in the present case that the dual convictions of Dewey Gray of first degree murder and the first and second degree murder convictions of Willie Gray could not be allowed to stand in light of the foregoing discussion. It would indeed be a strange system of justice that would

29. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

30. Crim.R. 31(e).

31. Fuller v. United States, 132 U.S.App. D.C. 264, 407 F.2d 1199, 1231 (1967), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969); United States v. Sobell, 314 F.2d 314, 329 (2d Cir.), cert. denied, 374 U.S. 857, 83 S.Ct. 1906, 10 L.Ed.2d 1077 (1963); United States

v. Ogull, 149 F.Supp. 272 (S.D.N.Y.1957), aff'd sub nom. United States v. Gernie, 252 F.2d 664 (2d Cir.), cert. denied, 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed.2d 1073 (1958). See Holmes v. United States, 124 U.S.App.D.C. 152, 363 F.2d 281 (1966).

32. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, 713–714 (1969).

allow each appellant to be sentenced to two life sentences for the killing of one person. As to Dewey Gray one of his convictions is to be set aside on other grounds and one affirmed. Thus the possible prejudice of double convictions and sentencing has been obviated. We do not believe that the presentation of the double theories of the same murder as separate counts in the indictment was so confusing to the jury as to invalidate both convictions.

Appellants assign as error instruction 40;[33] appellants claim it was ambiguous and unsupported by the evidence. While we do not necessarily recommend this particular instruction, we do not believe that the instruction (as it was intended to read) was prejudicially ambiguous nor unsupported by the evidence. Appellants state in their brief that the evidence showed only that Officer Strong assailed appellants. This is erroneous. The evidence indicated both that Officer Strong assailed appellants and that appellant Dewey Gray assailed Officer Strong. Appellants have not pointed to any other portion of the instruction which might be in error; accordingly, we do not believe this point merits further discussion.

The final error claimed by appellants is that a presentence conference was held outside the presence of the appellants. Counsel for appellants objected to this procedure and the district attorney, agreeing that the procedure was erroneous, left the conference. We have recently found, in Speidel v. State, 460 P.2d 77 (Alaska 1969) this type of procedure to be violative of Criminal Rule 38, which guarantees the accused the right to be present at the imposition of sentence. The last issue to be decided here is whether our decision in *Speidel* that a defendant has a right to be present at a presentence conference should be applied retroactively or only prospectively.

As early as 1932, the United States Supreme Court said that in applying a decision, a state court "may make a choice for itself between the principle of forward operation and that of relation backward."[34] Recently there have been a great number of Supreme Court decisions that have dealt with this problem.[35] These cases have set

---

33. Instruction No. 40 provided as follows:
 The law presumes that a person intends the ordinary, natural and probable consequences of his voluntary acts. This is a disputable presumption and may be overcome by evidence to the contrary. If you find that the defendants, or either of them, killed Benjamin F. Strong, then in determining the question of intent it is important that you consider the means by which the killing was accomplished. If and when the evidence shows that one person or persons assailed and in fact did kill the person thus attacked, such evidence gives rise to a presumption that the assailant intended death or other great bodily harm.
 That presumption, however, may be overcome by contrary evidence; and any such evidence is sufficient to overcome it which creates in the minds of the jurors a reasonable doubt that the intent of the defendants, or either of them, was [not, sic] as so presumed. In the absence of evidence to the contrary, the presumption must prevail.
 The parties at trial and on appeal have evidently overlooked the typographical error in the second to last sentence. This

oversight is perhaps evidence of the cumbersome nature of the instruction. Since the case is being reversed we need not discuss the possibility of prejudice which may have arisen from this clerical error.

34. Great N. R. R. v. Sunburst Oil & Ref. Co., 287 U.S. 358, 364, 53 S.Ct. 145, 77 L.Ed. 360, 366 (1932).

35. Cipriano v. Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647, 652 (1969); Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969); Desist v. United States, 394 U.S. 244, 89 S. Ct. 1030, 22 L.Ed.2d 248 (1969); Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969); Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968); Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968); McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968); DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed. 1308 (1968); Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Tehan v. United States ex rel.

out the various factors to be considered in determining prospective or retroactive applicability.

■ The decision of whether a new rule of criminal procedure should be applied retroactively or prospectively generally should employ two criteria: (1) the purpose to be served by the new rule; (2) the effect on the administration of justice of a retroactive application of the new rule.

■ In relation to the "purpose" criterion, we must analyze the purpose of the rule we have adopted and consider whether this purpose is compatible with retroactive application.[36] The purpose of our decision to allow a defendant to be present at the presentence conference is to insure a fair and full evaluation of the facts to be considered in imposing sentence. While it is desirable to have a fundamentally fair presentence conference in all cases, it is doubtful whether a retroactive application of our decision will rectify any unfairness that has occurred at presentence conferences in the past where defendants have not been present. Even if we were to reverse and remand all past cases for a presentence conference in the presence of the defendant and a resentencing, it is improbable that the trial judges could remember what facts were relied on to determine the original sentence. If a defendant were to correct erroneous facts concerning his background and history that were submitted to a trial judge at the original presentence conference, there would be no way to tell how heavily these facts were weighed in creating the original sentence. It would be virtually impossible to determine how any erroneous facts prejudiced the defendant and, consequently, it is unlikely any past mistakes could now be remedied.

The last criterion to be considered is "administration of justice." In Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248, 256 (1969), the Supreme Court indicated that two factors to be reviewed in relation to the "administration of justice" criterion are whether there were a substantial number of convictions based upon the criminal procedural law before the new rule was laid down, thus requiring many retrials, and whether it would be difficult to determine the amount of prejudice in each case caused by the old rule.[37]

There may have been a number of convictions in Alaska where defendants were denied the right to be present at presentence conferences. If our present decision is applied retroactively, there probably would be many post-conviction motions from prisoners requesting the setting aside of sentences and imposition of new ones. Further, it would be difficult to discover the amount of prejudice in each case caused by the old procedure.

■ In light of these factors, we hold that the rule that a defendant has the right to be present at a presentence conference should have prospective application only; that is, it will apply only to presentence conferences held after the date of the *Speidel* decision.

The judgment against Willie Lee Gray, Jr., is set aside and reversed with directions that the indictment against him for first degree premeditated murder be dismissed. A new trial is granted on the count of first degree felony murder, and its lesser included offenses. The judgment against Dewey Spencer Gray for felony murder is similarly set aside. The judgment against Dewey Spencer Gray for first degree premeditated murder is affirmed. However, the case against Dewey Spencer Gray is reversed for entry of an amended judgment reflecting conviction of the crime of first degree premeditated murder. Dewey Spencer Gray cannot be subjected to another trial for felony murder.

NESBETT, C. J., not participating.

36. *See* Tehan v. United States ex rel. Shott, 382 U.S. 406, 413–416, 86 S.Ct. 459, 15 L.Ed.2d 453, 458–460 (1966).

37. 394 U.S. 244, 89 S.Ct. 1030. *Id.* at 256.

Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed. 2d 601 (1965).